[No. D051293. Fourth Dist., Div. One. Jan. 24, 2008.]

CASHCALL, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
RAYMOND COLE et al., Real Parties in Interest.

## Counsel

Finlayson, Augustini & Williams, Jesse S. Finlayson and Michael R. Williams for Petitioner.

No appearance for Respondent.

Law Offices of Douglas J. Campion, Douglas J. Campion; Hyde & Swigart and Joshua B. Swigart for Real Parties in Interest.

OPINION

**McDONALD, Acting P. J.**—We hold that in the circumstances of this case the trial court did not err by applying a balancing test and ordering precertification discovery in a class action for the purpose of identifying class members who may become substitute plaintiffs in place of named plaintiffs who were not members of the class they purported to represent. We conclude there is no bright-line rule that the original class representative plaintiffs must be members of the class to have standing to obtain precertification discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2006, plaintiffs Amanda Kight, Kay-Francis Mulligan, and Brenda Guzman filed a class action complaint against defendant CashCall, Inc., and 50 "Doe" defendants (CashCall) alleging violation of their privacy rights.[1] The complaint alleged each of the plaintiffs had borrowed money from CashCall, and CashCall, in making consumer loans and collecting delinquent payments on those loans, had "illegally secretly monitor[ed] telephone and other conversations between [CashCall's] employees and Plaintiffs, as well as other class members as alleged herein." The complaint alleged: "Such illegal monitoring was done for the purpose of assisting [CashCall] in its collection efforts against Plaintiffs and the other class members . . ." and "was done . . . without Plaintiffs' knowledge or consent or without the class members' knowledge or consent." It further alleged, on information and belief, that CashCall's "corporate representative has admitted under oath that as a regular part of its ongoing daily business practices, [CashCall] monitors a number of collection calls with alleged debtors." The complaint alleged three causes of action: (1) unlawful invasion of privacy in violation of Penal Code section 632;[2] (2) unlawful intrusion into private affairs; and (3) violation of the right to privacy under article I, section 1 of the California Constitution. The complaint sought general and special damages, statutory damages of at least $5,000 per incident pursuant to Penal Code section 637.2,[3] punitive damages, and injunctive relief to prevent the alleged illegal acts in the future.

[1] The "Doe" defendants were unknown to plaintiffs at that time and named as defendants pursuant to Code of Civil Procedure section 474.

[2] Penal Code section 632, subdivision (a), provides: "Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding [$2,500], or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment . . . ."

[3] Penal Code section 637.2, subdivision (a), provides: "Any person who has been injured by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amounts: [¶] (1) Five thousand dollars ($5,000). [¶] (2) Three

Plaintiffs subsequently filed a first amended class action complaint, alleging CashCall also surreptitiously monitored or eavesdropped on their conversations through a machine or other manner in violation of Penal Code section 631, subdivision (a).[4] The first amended complaint also added a cause of action seeking injunctive relief pursuant to Penal Code section 637.2, subdivision (b).[5]

On February 27, 2007, apparently after learning CashCall had not secretly monitored any of the telephone conversations between its employees and the three named plaintiffs, those plaintiffs filed an amendment to their complaint, substituting in their place new named plaintiffs Raymond Cole, Stephanie Hyatt, Steven Aragon, Toyia Baker, and Sakeena Christmon.

On June 4, the five new named plaintiffs filed a motion for an order compelling CashCall to identify class members. In their memorandum of points and authorities, plaintiffs explained: "During discovery it was learned that the original three named representative Plaintiffs were not in fact persons [whose calls] were monitored, according to [CashCall's] records. Therefore, five additional persons were then named as representative Plaintiffs. It was later learned that those, too, were not on the list of [persons whose calls were monitored]." They further noted that discovery from CashCall showed there were about 551 persons whose calls were monitored. With the trial court's consent at the case management conference, the parties agreed to allow the court to decide the motion without requiring plaintiffs to first formally seek production of those names and contact information and have CashCall refuse that production request.

times the amount of actual damages, if any, sustained by the plaintiff." Penal Code section 637.2, subdivision (c), provides: "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

[4] Penal Code section 631, subdivision (a), provides: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding [$2,500], or by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison, or by both a fine and imprisonment in the county jail or in the state prison . . . ."

[5] Penal Code section 637.2, subdivision (b), provides: "Any person may . . . bring an action to enjoin and restrain any violation of this chapter, and may in the same action seek damages as provided by subdivision (a)."

Plaintiffs stated they sought "to obtain the names of CashCall debtors [whose calls] were monitored without their consent in order to substitute in a [named] Plaintiff [whose call] was in fact actually monitored." They further stated: "Because of the very nature of the illegal conduct—secret monitoring of telephone calls—it goes without saying that even persons whose calls have been secretly monitored do not know and cannot know if their rights have been violated without reference to [CashCall's] records." Plaintiffs argued: "It is the clandestine component that makes [CashCall's] monitoring illegal, and it is that aspect [that] makes it difficult, if not impossible, for a victim to ever learn [his or her] rights were violated." During discovery, CashCall admitted there were at least 551 instances in which it had monitored calls, but it provided plaintiffs with only the account numbers of those customers whose calls were monitored and did not disclose those customers' names or contact information. Plaintiffs argued: "It is clearly an abuse of [the putative class members' rights] to be denied a suitable class representative because of such a 'Catch 22' absurdity—if they know of the monitoring, it is legal because they know of it; if they don't know of it, it is illegal, but only those persons [who] don't know of it can be named class representatives, as the conduct is only illegal as to those unaware of such monitoring. So no class representative could ever be named as no one could ever come forward with such a complaint! Thus, in [applying] the balancing test weighing the potential abuse of the class action system versus the rights of the parties as required, . . . this factor should be strongly considered in considering how the rights of the parties would be prejudiced by refusing to provide this requested discovery." Plaintiffs expressed concern that, without the requested discovery, the class action might be dismissed for lack of a suitable class representative and then the one-year statute of limitations under Code of Civil Procedure section 340 would run, leaving the actual class members without a remedy for CashCall's violation of their privacy rights. They argued the trial court, in applying the balancing test, should conclude the rights of the parties (i.e., class members) outweigh any potential abuse of the class action procedure and therefore should order that CashCall disclose the names and contact information of the 551 putative class members. They argued: "Not allowing such requested discovery and [subsequent] substituting in a suitable class representative will prevent any action to be filed because any further actions will be time barred, because of the one[-]year statute of limitations. [CashCall] will then likely avoid any penalties for engaging in such egregious conduct, and will be able to continue such conduct with impunity until such time in the future [when] someone else [may] determine[] [he or she has] been a victim."

CashCall opposed plaintiffs' motion for precertification discovery of the names and contact information of CashCall's customers whose calls it had secretly monitored. Citing *First American Title Ins. Co v. Superior Court* (2007) 146 Cal.App.4th 1564 [53 Cal.Rptr.3d 734] (*First American*),

CashCall argued the trial court should deny the motion because the named plaintiffs lacked standing because they were never members of the putative class (i.e., their calls had not been secretly monitored by CashCall). CashCall argued that "providing [the named plaintiffs] the discovery that they seek would sanction an abuse of the class action procedure by allowing the Named Plaintiffs' attorneys to make an 'end-run' around the standing requirements by filing a class action in the name of individuals who are not members of the class that they seek to represent and then using precertification discovery to obtain more appropriate plaintiffs." CashCall further argued: "[B]ecause the potential for abuse of the class action procedure is so overwhelming where the named plaintiffs do not have standing, there should not be any obligation to consider the alleged rights of the actual (but absent) putative class members at all." It essentially argued the trial court should summarily deny plaintiffs' motion without applying the balancing test applied in *First American.*

In support of CashCall's opposition, it submitted the declaration of Louis Ochoa, its vice-president of loan servicing, who declared that:

"5. Management and supervisory personnel in CashCall's collections department have the ability to monitor telephone calls between CashCall collection representatives and CashCall customers that are initiated by CashCall or by the customer using CashCall's Cisco telephone system and call monitoring software. CashCall has written policies and procedures regarding call monitoring, and each supervisor in CashCall's collections department receives training with respect to call monitoring.

"6. Pursuant to CashCall's call monitoring policies and procedures, each CashCall collection representative is monitored and evaluated on two to four collection calls per month by a supervisor in the collections department. For each telephone call that is monitored, the supervisor who conducted the call monitoring completes an on-line call monitoring tracking and scoring form. CashCall's supervisory personnel use call monitoring to ensure that collection representatives are using basic collection techniques, following CashCall's call model, and operating within the confines of the Fair Debt Collection Practices Act . . . .

"7. Individuals who initiate telephone calls to CashCall to apply for a CashCall loan receive an automated verbal message, before the individual ever speaks with a CashCall representative and obtains a loan from CashCall, which states that 'This call may be monitored or recorded for quality assurance purposes.' In addition, CashCall customers who initiate telephone calls to CashCall with respect to collection or other matters receive an automated verbal message, before the customer ever speaks with a CashCall

representative, which states that 'This call may be monitored or recorded for quality assurance purposes.'

"8. According to CashCall's records, CashCall did not monitor any telephone calls between the former named Plaintiffs in this case—Amanda Kight, Brenda Guzman, and Kay-Frances Mulligan—and CashCall collection representatives.

"9. According to CashCall's records, CashCall did not monitor any telephone calls between the current named Plaintiffs in this case—Raymond Cole, Stephanie Hyatt, Steven Aragon, Toyia Baker, and Sakeena Christmon—and CashCall collection representatives.

"10. Pursuant to the protective order entered in this case, CashCall produced to the named Plaintiffs' counsel CashCall's call monitoring tracking forms that show which telephone calls between CashCall's collection representatives and CashCall's customers (identified by account number) were monitored by CashCall."

In reply, plaintiffs argued the balancing test applied in *First American* should be applied by the trial court (albeit with a different outcome) instead of CashCall's proposed bright-line test of whether plaintiffs were ever actual class members.

On July 10, the trial court issued its tentative ruling on the motion, granting plaintiffs' motion in part. The court's tentative ruling stated:

"After weighing the danger of possible abuses of the class action procedure against the rights of the potential class members, the Court determines that precertification discovery of the names and contact information of potential class members is warranted under the circumstances of this case. The circumstances of this case are distinguishable from the circumstances in [*First American*], such that *First American*'s holding does not control here.

"In support of [CashCall's] opposition to this motion, Louis Ochoa testifies that, '[p]ursuant to the protective order entered in this case, CashCall produced to the named Plaintiffs' counsel CashCall's call monitoring tracking forms that show which telephone calls between CashCall's collection representatives and CashCall's customers (identified by account number) were monitored by CashCall.' [Citation.] According to plaintiffs[,] there are over 500 such 'monitored' customers. [Citations.]

"Plaintiffs shall submit to the Court, and serve on [CashCall], a proposed letter to the 'monitored' customers no later than July 25, 2007. The letter

shall conform to the specifications set forth in [two cited cases]. [CashCall] shall, no later than August 6, 2007, file with the Court and serve on plaintiffs any objections to the content of the letter. The Court may schedule a hearing to address any such objections.

"Once approved by the Court, the above-described letter will be mailed by a mailing house. The mailing house shall be one chosen by plaintiffs because it is plaintiffs who shall bear the sole expense of this procedure. Plaintiffs shall notify [CashCall] in writing of the name, address and, if available, a contact person at the mailing house chosen. [CashCall] shall provide the names and last known residential addresses of the 'monitored' customers. The information shall be provided to the mailing house within one week of plaintiffs' written notification to [CashCall] of the mailing house being used." On July 11, the trial court conducted a hearing on plaintiffs' motion. After hearing arguments of counsel, the court stated: "The interests of the potential class members are pretty much as argued by the plaintiffs. The court didn't agree with every argument made by plaintiffs, but if it is true that there are potential class members [whose calls] were recorded, for example, without their knowledge in violation of the Penal Code, among perhaps other things, and there may be a statute of limitations problem and no other enforcement is being done, those are factors the court should consider." The court then confirmed its tentative ruling as its final ruling. The court clarified that CashCall must provide the names and last known addresses of its monitored customers to the mailing house only (and not to plaintiffs' counsel).

On July 23, CashCall filed the instant petition for writ of mandate, challenging the trial court's order granting, in part, plaintiffs' motion for precertification discovery of the identities of class members. CashCall also requested an immediate stay of the proceedings. On July 27, we issued an order staying all proceedings in the trial court until further order of the court and requested a response to the petition from plaintiffs as the real parties in interest. On August 15, plaintiffs filed a response opposing the petition. On August 23, we issued an order to show cause (OSC) why the relief requested should not be granted. We also requested that the real parties in interest (i.e., plaintiffs) file a return to the OSC and CashCall then file a reply. Plaintiffs thereafter filed a return and CashCall filed a reply to their return.

DISCUSSION

I

*Precertification Discovery in Class Actions Generally*

■ In California, "[t]he class action is a product of the court of equity—codified in section 382 of the Code of Civil Procedure. It rests on considerations of necessity and convenience, adopted to prevent a failure of justice. [Citation.]" (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458 [115 Cal.Rptr. 797, 525 P.2d 701].) "To maintain a class action, the representative plaintiff must adequately represent and protect the interests of other members of the class. [Citation.]" (*Id.* at p. 463.) Therefore, a class representative plaintiff must be situated similarly to the other class members united by a common interest. (*Id.* at pp. 458–460; *Classen v. Weller* (1983) 145 Cal.App.3d 27, 46 [192 Cal.Rptr. 914].)

■ "Should the [trial] court conclude that the named plaintiffs may not adequately represent the class, it should afford them an opportunity to amend their complaint to redefine the class or to add new individual plaintiffs. [Citations.]" (*Scott v. City of Indian Wells* (1972) 6 Cal.3d 541, 550 [99 Cal.Rptr. 745, 492 P.2d 1137].) Because a named plaintiff may not adequately represent the class and may need to amend the complaint to add a new individual plaintiff who will adequately represent the class, precertification "[d]iscovery to ascertain a suitable class representative is proper. [Citation.]" (*Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772, 779 [40 Cal.Rptr.3d 575], citing *Budget Finance Plan v. Superior Court* (1973) 34 Cal.App.3d 794, 799 [110 Cal.Rptr. 302] ["[I]f discovery is necessary in order to [afford a named plaintiff an opportunity to add new individual plaintiffs who adequately represent the class], it should be made available."].) The California Supreme Court recently stated: "Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case. [Citations.]" (*Pioneer Electronics (USA), Inc. v. Superior Court* (2007) 40 Cal.4th 360, 373 [53 Cal.Rptr.3d 513, 150 P.3d 198].)

■ In deciding whether to order precertification discovery of the identities of potential class members, a "trial court must . . . expressly identify any potential abuses of the class action procedure that may be created if the discovery is permitted, and weigh the danger of such abuses against the rights of the parties under the circumstances." (*Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 300–301 [135 Cal.Rptr.2d 90] (*Parris*).) In applying that balancing test to the circumstances in a particular case, a trial court exercises its discretion. (*Best Buy Stores, L.P. v. Superior Court, supra,* 137 Cal.App.4th

at p. 779.) Our "review of [a trial court's] discovery rulings is governed by the abuse of discretion standard. [Citation.]" (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1061 [95 Cal.Rptr.2d 864].)

## II

### *CashCall's Proposed Bright-line Rule*

CashCall concedes that trial courts, applying the *Parris* balancing test, may allow precertification discovery of the identities of class members in cases in which named plaintiffs originally were appropriate members of the class and therefore had standing, but subsequently lost their standing. (See, e.g., *Best Buy Stores, L.P. v. Superior Court, supra,* 137 Cal.App.4th at p. 779; *Parris, supra,* 109 Cal.App.4th at pp. 300–301; *Budget Finance Plan v. Superior Court, supra,* 34 Cal.App.3d at p. 799; *Pioneer Electronics (USA), Inc. v. Superior Court, supra,* 40 Cal.4th at p. 373.) However, in its petition CashCall contends that in class action cases in which the named plaintiffs have *never* been members of the class (i.e., have never had standing), a bright-line rule should apply to preclude those named plaintiffs from obtaining precertification discovery of the identities of class members.[6] Under CashCall's proposed bright-line rule, a trial court is *required* to deny a motion for precertification discovery, *without* applying the *Parris* balancing test and exercising its discretion to permit precertification discovery.[7] Because CashCall does not cite, and we have not found, any case deciding this specific question, we consider this question of law to be one of first impression.

CashCall's proposed rule is based on the premise that a named plaintiff in a class action must have standing as an appropriate member of the class at the beginning of the action and, if not, has no right to request or obtain precertification discovery to identify members of the class. Absent a named plaintiff with standing, the class action is subject to demurrer and dismissal. Although we agree with the general principle that a plaintiff must have

[6] We reject plaintiffs' assertion that we should summarily deny CashCall's petition because its remedies on appeal are adequate. Rather, because the petition raises a question of first impression regarding precertification discovery of the identities of class members, we exercise our discretion to consider the merits of the contentions set forth in CashCall's petition.

[7] Although CashCall's petition apparently attempts to conceal the true nature of its proposed bright-line rule by arguing that in applying the *Parris* balancing test trial courts cannot consider the rights or interests of the actual class members if the original named plaintiff never had standing, the effect of CashCall's argument is that a bright-line rule should apply to bar all precertification discovery when the original plaintiff never had standing and therefore the *Parris* balancing test cannot be applied in such cases. In CashCall's reply to plaintiffs' return, it openly concedes that it is proposing a bright-line rule that would bar all precertification discovery by named class representative plaintiffs who never had standing.

standing to assert a cause of action, we are not persuaded by CashCall's assertion in the context of class actions that standing of the original named plaintiff(s) at the beginning of the action is necessarily a requirement for continuation of the action. Rather, we conclude that a trial court, exercising its reasonable discretion in applying the *Parris* balancing test in the circumstances of a particular case, may order precertification discovery of the identities of class members (i.e., those with standing) who, when contacted, ultimately may elect to be substituted as named plaintiffs to continue prosecution of the class action on behalf of the class.

### A

■ In general, a named plaintiff must have standing to prosecute an action. (Code Civ. Proc., § 367 ["Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."].) "Standing is typically treated as a threshold issue, in that without it no justiciable controversy exists." (*People v. Superior Court* (*Plascencia*) (2002) 103 Cal.App.4th 409, 420 [126 Cal.Rptr.2d 793].) ■ *Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297 [109 Cal.Rptr.2d 154] summarized the general requirement of standing: "As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator. [Citations.] To have standing, a party must be beneficially interested in the controversy; that is, he or she must have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.] The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical. A complaining party's demonstration that the subject of a particular challenge has the effect of infringing some constitutional or statutory right may qualify as a legitimate claim of beneficial interest sufficient to confer standing on that party. [Citation.]" (*Id.* at pp. 314–315.) "Without standing, there is no actual or justiciable controversy, and courts will not entertain such cases. [Citation.]" (*Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 751 [45 Cal.Rptr.2d 333].) Alternatively stated, "[a] litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on its merits. [Citation.]" (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128 [38 Cal.Rptr.3d 575]; see also *Said v. Jegan* (2007) 146 Cal.App.4th 1375, 1382 [53 Cal.Rptr.3d 661] [" 'Standing' is a party's right to make a legal claim and is a threshold issue to be resolved before reaching the merits of an action."].)

■ However, a named plaintiff's lack of standing at the beginning of an action is not necessarily fatal to continuation of the action. Although a complaint filed by a party who lacks standing is subject to demurrer, the rationale for the demurrer "would be that there is a defect in the parties, since the party named as plaintiff is not the real party in interest. [Citation.]" (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004 [79 Cal.Rptr.2d 544] (*Cloud*).) Amendments to complaints under Code of Civil Procedure section 473, subdivision (a), are liberally allowed to substitute in plaintiffs with standing for original plaintiffs without standing. (*Cloud, supra,* at pp. 1004–1011; *Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 19–21 [108 P.2d 906] (*Klopstock*).) Code of Civil Procedure section 473, subdivision (a)(1), provides: "The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect . . . ." ■ As one authority explains: "A suit is sometimes brought by a plaintiff without the right or authority to sue, and the amendment seeks to substitute the real party in interest. Although the original complaint does not state a cause of action *in the plaintiff*, the amended complaint by the right party restates the identical cause of action, and amendment is freely allowed. [Citation.]" (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1155, p. 614.) The California Supreme Court recently recognized the authority of trial courts to allow amendment of complaints by plaintiffs without standing to substitute in new plaintiffs who are real parties in interest with standing: "Defendants argue plaintiffs should not be permitted to substitute a new plaintiff because their failure to name the new plaintiff in their original complaint was not a mistake. No such rule exists. To the contrary, *courts have permitted plaintiffs who have been determined to lack standing,* or who have lost standing after the complaint was filed, *to substitute as plaintiffs the true real parties in interest.* [Citations.]" (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 243 [46 Cal.Rptr.3d 66, 138 P.3d 214], italics added.)

■ In *Klopstock,* the California Supreme Court held that if the cause of action alleged against the defendant would not be wholly different after amendment, a complaint filed by a party without standing may be amended to substitute in the real party in interest. (*Klopstock, supra,* 17 Cal.2d at pp. 19–21.) "The power to permit amendment is denied only if a change is made in the liability sought to be enforced against the defendant. [Citation.]" (*Id.* at p. 20.) As *Cloud* noted, "[s]ubsequent cases have recognized that *Klopstock* stands for the proposition that California Code of Civil Procedure section 473 must be liberally construed to permit amendment to substitute a plaintiff with standing for one who is not a real party in interest [i.e., one without standing]. [Citations.]" (*Cloud, supra,* 67 Cal.App.4th at pp. 1005–1006.) Another court stated: "Courts have read [*Klopstock*] to

construe Code of Civil Procedure section 473 to permit amendment to substitute a plaintiff with standing for one who is not a real party in interest [i.e., a plaintiff without standing]. [Citations.]" (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 507 [85 Cal.Rptr.2d 352].) In *Cloud*, the court further concluded: "[T]he *Klopstock* line of cases makes clear that an amendment to substitute in the real party in interest is entitled to relation-back effect. The effect of plaintiff's lack of standing, therefore, was simply that plaintiff needed to amend [the complaint to substitute in a real party in interest as plaintiff]." (*Cloud*, at p. 1011; see also *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1675–1678 [43 Cal.Rptr.2d 214].) Therefore, "[i]n general, *courts liberally allow amendments for the purpose of permitting plaintiffs who lack* or have lost *standing to substitute as plaintiffs the true real parties in interest.* [Citations.]" (*Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 136 [48 Cal.Rptr.3d 836], italics added.)

## B

 It follows from the general rule liberally allowing amendments of complaints by plaintiffs without standing to substitute in new plaintiffs with standing (i.e., real parties in interest) that standing of the original named plaintiffs at the beginning of an action is *not* necessarily a prerequisite to continuation of the action. CashCall does not cite, and we are unaware of, any case holding that an original plaintiff who lacks standing may never substitute in a new plaintiff who has standing to continue prosecution of the action (whether a class action or not).

The general rule allowing substitution of new plaintiffs with standing in place of original plaintiffs without standing applies to class actions. In *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113] (*La Sala*), the court stated: "If . . . the [trial] *court* concludes that the named plaintiffs can no longer suitably represent the class, it *should at least afford plaintiffs the opportunity to amend their complaint,* to redefine the class, or *to add new individual plaintiffs,* or both, *in order to establish a suitable representative.* [Citations.] If, after the court has thus extended an opportunity to amend, the class still lacks a suitable representative, the court may conclude that it must dismiss the action. At this point, the further issue arises whether the court must notify the class of the proposed dismissal." (*Id.* at p. 872, italics added.)

In applying the general rule allowing substitution of plaintiffs, there is no logical reason to necessarily treat a plaintiff who initially had standing when the class action complaint was filed, but subsequently lost his or her standing, differently from, and more favorably than, a plaintiff who never had standing

when the complaint was filed. CashCall does not cite, and we are unaware of, any case holding that a plaintiff in a class action who did not have standing when the complaint was filed can never substitute a new plaintiff with standing.[8] On the contrary, the California Supreme Court has effectively held otherwise. In *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582 [200 Cal.Rptr. 38, 676 P.2d 1060] (*Kagan*), the court addressed circumstances in which a plaintiff first obtained from a defendant all individual relief she requested in a demand letter, but nevertheless thereafter filed a class action against the defendant on behalf of all customers of the defendant who had suffered the same type of injury (i.e., administrative or trustee fees charged for individual retirement accounts contrary to the defendant's promise). (*Id.* at pp. 587–589.) The trial court granted the defendant's motion that the plaintiff's action lacked merit because she had not suffered any injury cognizable under the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.). (*Kagan,* at p. 589.) On appeal, the California Supreme Court addressed the question of whether a plaintiff who first obtains individual relief can subsequently bring a class action against the defendant. (*Id.* at pp. 586–587.) *Kagan* stated: "We agree [with the defendant] that a consumer who has notified a prospective defendant of an individual grievance and has obtained his or her requested relief cannot subsequently bring either an individual or class action under the Act. However, this is not simply because the consumer no longer 'suffers any damage' [under the CLRA] but because the prospective defendant has remedied the contested practices." (*Kagan,* *supra,* 35 Cal.3d at p. 591.) More importantly here, rejecting the defendant's assertion that the plaintiff could not bring a class action because she was not a member of the class she purported to represent, *Kagan* cited *La Sala, supra,* 5 Cal.3d 864, a pre-CLRA case that also concluded a defendant could not defeat a class action by granting individual relief to the class representative plaintiffs. (*Kagan,* at pp. 593–594.) *Kagan* then concluded:

"We now hold only that [the defendant's] exemption of plaintiff from the imposition of the trustee fee does not render her unfit per se to represent the class. In determining whether plaintiff's claims are typical of those of the class, and whether plaintiff can fairly and adequately protect the class she seeks to represent, the trial court on remand 'may take into account that the named plaintiff[] [has] already obtained [her] individual benefits from the action; plaintiffs who have nothing at stake often will not devote sufficient energy to the prosecution of the action; further, the receipt of benefits by the named plaintiffs may sometimes create a conflict of interest between the class and its would-be representatives. On the other hand, . . . the court may find

---

[8] To the extent CashCall cites *First American, supra,* 146 Cal.App.4th 1564, as so holding, we disagree with its reading of that case, which we discuss more fully below.

that the named plaintiff[] will continue fairly to represent the class, and, therefore, permit [her] to continue the class litigation.' [Citing *La Sala, supra,* 5 Cal.3d at pp. 871–872.]

■ "We do note that plaintiff's claims appear to be typical of those of the putative class, and that the tenacity with which plaintiff has thus far pursued this matter is indicative that she has those qualities necessary to fairly and adequately protect the interests of that class . . . . However, should the trial court conclude that plaintiff cannot suitably represent the class, it should afford her 'the opportunity to amend [her] complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative.' [Citing *La Sala, supra,* 5 Cal.3d at p. 872.] Following these procedures, if the court concludes that the action should be dismissed for lack of a suitable representative, it should first notify the members of the class. [Citation.]" (*Kagan, supra,* 35 Cal.3d at pp. 595–596.) Accordingly, *Kagan* in effect concluded that a class action may continue even though its original plaintiff lacks individual standing or is otherwise not similarly situated to the class members when the class action complaint is filed, at least until such time as that plaintiff has the opportunity to amend the complaint to add or substitute new plaintiffs who have standing and are similarly situated to the class members. (*Kagan, supra,* at p. 596.)

## C

■ Because *Kagan* and the other cases discussed above recognize the general rule liberally allowing amendments of complaints to substitute new plaintiffs who have standing and, in particular, allowing an original plaintiff without standing to substitute in a new plaintiff with standing (whether in a class action or otherwise), an original plaintiff who lacks standing *in a class action* should be allowed to file a motion for, and potentially obtain, precertification discovery of the identities of actual class members (i.e., potential plaintiffs with standing who may elect to serve as substitute class representative plaintiffs). There is no reason to necessarily treat original plaintiffs who never had standing differently from, and more favorably than, original plaintiffs who had, but lost, standing. We conclude the *Parris* balancing test should be applied by trial courts in exercising their discretion whether to grant or deny an original plaintiffs' precertification motion for discovery of the identities of class members regardless of whether that original plaintiff had standing at the beginning of the action. (See, e.g., *Best Buy Stores, L.P. v. Superior Court, supra,* 137 Cal.App.4th at p. 779; *Parris, supra,* 109 Cal.App.4th at pp. 300–301; *Budget Finance Plan v. Superior Court, supra,* 34 Cal.App.3d at p. 799; *Pioneer Electronics (USA), Inc. v. Superior Court, supra,* 40 Cal.4th at p. 373.) Accordingly, we reject CashCall's contention that a bright-line rule should apply in class actions to

require trial courts to necessarily reject precertification discovery motions by plaintiffs who never had standing. *First American, supra,* 146 Cal.App.4th 1564, and *Cryoport Systems v. CNA Ins. Cos.* (2007) 149 Cal.App.4th 627 [57 Cal.Rptr.3d 358], cited by CashCall, are factually inapposite and do not persuade us to conclude otherwise. Furthermore, neither case adopted or applied the bright-line rule proposed by CashCall in its petition.

## III

### *Trial Court's Application of the Balancing Test*

CashCall contends that if its proposed bright-line rule does not apply, the trial court nevertheless abused its discretion in applying the *Parris* balancing test by concluding the rights of the class members outweighed the potential for abuse of the class action procedure in the circumstances of this case.

### A

In moving for precertification discovery of the identities of class members, plaintiffs in this case (i.e., the five substitute named plaintiffs) argued that under the *Parris* balancing test the rights of the class members outweighed the potential for abuse of the class action procedure. They contended that because of the secret nature of CashCall's monitoring of its employees' calls with customers (i.e., class members), none of the class members could have known their privacy rights had been violated. Only CashCall knew the identities of the 551 customers (i.e., class members) whose calls it secretly monitored. Therefore, none of the class members presumably had knowledge they were class members who could elect to represent the class as named plaintiffs. Accordingly, precertification discovery from CashCall of the identities of class members was essential to potentially obtain a class member to act as a named plaintiff and continue the class action. Without that precertification discovery, the class of 551 members whose calls were secretly monitored would be unable to obtain any relief for the alleged violations of their privacy rights. Furthermore, because of the applicable one-year statute of limitations under Code of Civil Procedure section 340,[9] the class members, absent precertification discovery, would have no knowledge of the alleged violation by CashCall of their privacy rights and therefore presumably would

---

[9] Code of Civil Procedure section 340 provides a one-year statute of limitations for "(a) An action upon a statute for a penalty . . . , if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation." For purposes of this opinion, we need not, and do not, decide whether that one-year statute of limitations could apply to bar the statutory privacy right causes of action that class members potentially could allege in the future, whether individually or pursuant to another class action.

not file an independent action within that statute of limitations, thereby barring their claims for relief.

As discussed above, the trial court's tentative ruling on the motion granted plaintiffs' motion in part, stating:

"After weighing the danger of possible abuses of the class action procedure against the rights of the potential class members, the Court determines that precertification discovery of the names and contact information of potential class members is warranted under the circumstances of this case. The circumstances of this case are distinguishable from the circumstances in [*First American*], such that *First American*'s holding does not control here.

"In support of [CashCall's] opposition to this motion, Louis Ochoa testifies that, '[p]ursuant to the protective order entered in this case, CashCall produced to the named Plaintiffs' counsel CashCall's call monitoring tracking forms that show which telephone calls between CashCall's collection representatives and CashCall's customers (identified by account number) were monitored by CashCall.' [Citation.] According to plaintiffs[,] there are over 500 such 'monitored' customers. [Citations.]" At the hearing on plaintiffs' motion, the trial court stated: "The interests of the potential class members are pretty much as argued by the plaintiffs. The court didn't agree with every argument made by plaintiffs, but if it is true that there are potential class members [whose calls] were recorded, for example, without their knowledge in violation of the Penal Code, among perhaps other things, and there may be a statute of limitations problem and no other enforcement is being done, those are factors the court should consider." The court then confirmed its tentative ruling as its final ruling. The court clarified that CashCall must provide the names and last known addresses of its monitored customers to the mailing house only (and not to plaintiffs' counsel).

## B

We conclude the trial court did *not* abuse its discretion in applying the *Parris* balancing test and concluding the rights and interests of the class members outweighed the potential for abuse of the class action procedure in the circumstances of this case. In deciding whether to grant or deny a motion for precertification discovery of the identities of class members, a trial court, in applying the *Parris* balancing test, "must . . . expressly identify any potential abuses of the class action procedure that may be created if the discovery is permitted, and weigh the danger of such abuses against the rights of the parties under the circumstances." (*Parris, supra,* 109 Cal.App.4th at p. 301.)

In the circumstances of this case, the trial court could reasonably conclude the rights of the class members outweighed the potential for abuse of the

class action procedure. In considering the rights of the class members, the court noted as factors the alleged secret nature of CashCall's call monitoring (of which the class members remained unaware), the potential statute of limitations problem, and the fact that there was no other action or enforcement pending to provide class members with relief for the alleged violations of their privacy rights. In the circumstances of this case, the rights and interests of the class members are significant. If, as alleged, the 551 class members were, and remain, unaware of CashCall's secret monitoring of the calls between its collection department employees and the class members, those class members presumably will, absent precertification discovery and notification, remain unaware of CashCall's secret monitoring of their calls and alleged violation of their privacy rights.[10] Accordingly, without precertification discovery and notification, there is virtually no practical possibility that any of those 551 class members will learn of CashCall's secret call monitoring and therefore have sufficient knowledge to investigate and potentially assert causes of action against CashCall, whether as a named plaintiff in the instant (or another) class action or as an individual plaintiff. Furthermore, absent that knowledge, there is, as the trial court noted, a potential time bar (whether under Code Civ. Proc., § 340 or otherwise) that could preclude all or some of the 551 class members from ever obtaining any relief for CashCall's alleged violations of their privacy rights.

Finally, as the court noted, there is nothing in the record showing there has been any other investigation of, or enforcement action taken against, CashCall that could provide the class members with relief for the alleged violations of their privacy rights. Accordingly, absent the precertification discovery sought by plaintiffs, it is highly likely CashCall's alleged violations of the privacy rights of the class members would never be addressed in any class action or other proceeding that would potentially provide them with relief for those violations and, as a result, CashCall likely would avoid having to compensate the class members for its alleged violations of their privacy rights.[11] Because the class action complaint also seeks injunctive relief, it is likely that, without precertification discovery, CashCall's secret call monitoring presumably will continue in the future and thereby allegedly violate the privacy rights of customers who, like the current class members, will be unaware of those violations.

---

[10] To the extent CashCall customers were advised, and therefore were aware, of its call monitoring at the time of the monitored calls, for purposes of this opinion we assume, as plaintiffs argue, those customers are not class members, having in effect consented to such monitoring.

[11] As we noted above, Penal Code section 637.2 provides for damages of not less than $5,000 per violation of Penal Code section 631 or 632. Therefore, were precertification discovery not allowed in this case and the class action subsequently dismissed, CashCall would avoid paying a potential total damages amount of $2,755,000 (i.e., $5,000 multiplied by the 551 class members).

Furthermore, the public policy underlying Penal Code sections 631, 632 and 637.2 presumably is to protect individuals' privacy rights against the secret eavesdropping (e.g., monitoring) of their telephone calls. Therefore, the rights of the class members in this case involve important statutory rights that allegedly have been violated and, without precertification discovery, those violations likely will go unaddressed. In addition, the class action complaint alleges CashCall's secret call monitoring violated the class members' privacy rights under article I, section 1 of the California Constitution. Without precertification discovery, it is likely CashCall's alleged violation of those fundamental constitutional rights of the class members will also go unaddressed. Accordingly, as the trial court implicitly concluded, there are significant rights of the class members that could, and likely would, be adversely affected were plaintiffs' motion for precertification discovery denied.

The trial court also implicitly, if not expressly, considered the potential for abuse of the class action procedure were plaintiffs' motion for precertification discovery granted. (*Parris, supra,* 109 Cal.App.4th at p. 301.) In opposing plaintiffs' motion for precertification discovery, CashCall warned that such discovery would allow plaintiffs' attorneys to essentially make an "end run" around standing requirements and in effect require CashCall to supply the attorneys with a client with standing to continue the class action (and presumably earn fees the attorneys otherwise would not).

Although we are cognizant of the possibility that precertification discovery could, in certain circumstances, result in abuse of the class action procedure, the circumstances in the instant case are not likely to result in abuse. In this case, plaintiffs' attorneys apparently had existing clients who were customers of CashCall and had received collection calls from CashCall collection employees. The record does not show how the attorneys or their clients learned of CashCall's secret call monitoring. Nevertheless, presumably suspecting they may have been the subject of such monitored calls, the three original named plaintiffs filed the instant class action complaint against CashCall for alleged violations of their privacy rights. Only when CashCall informed those three plaintiffs that their calls had not been monitored did those plaintiffs first learn they did not have standing to continue as the putative class representative plaintiffs and needed to substitute in new plaintiffs with standing. Thereafter, the three original plaintiffs substituted in five new plaintiffs (presumably also existing clients of the attorneys) who suspected their calls may have been monitored by CashCall. Again, only when CashCall informed those five new plaintiffs that their calls had not been monitored did those plaintiffs first learn they did not have standing to continue as the putative class representative plaintiffs.

Rather than continuing this process of substituting in new plaintiffs who were customers of CashCall (if the attorneys have such additional clients) and

relying on CashCall to inform them whether their calls had been monitored, the current five named plaintiffs reasonably chose to shortcut this process by filing the instant motion for precertification discovery of the identities of the 551 class members (i.e., those customers who CashCall admitted had calls monitored). If, on discovery of their names and contact information by CashCall to the third party mailing house and delivery of the court-approved notice to the class members, one or more of them elects to become a named plaintiff in this class action, then the action presumably will proceed with an appropriate class representative and the class members will potentially obtain relief for CashCall's alleged violations of their privacy rights. We do not consider this process to be an abuse of the class action procedure in the circumstances of this case.

CashCall warns of a scenario in which an attorney may effectively use a "straw" plaintiff with no connection to defendant and no arguable or potential standing to serve as a named plaintiff in a class action and thereafter file a motion for precertification discovery of the identities of actual class members to find a client to substitute as a named plaintiff with standing to represent the class. However, that scenario described by CashCall does not match the circumstances in this case. On the contrary, the named plaintiffs (both the three original named plaintiffs and the five substitute named plaintiffs) were customers of CashCall (and presumably existing clients of the class action attorneys) and presumably had good reason to suspect their calls may have been secretly monitored by CashCall. Those plaintiffs did not lack any arguable possibility of standing at the time the class action complaint was filed. Those plaintiffs could not have learned, and did not learn, they did not have standing until CashCall (the only entity with that information) informed them their calls had not, in fact, been monitored (although the calls of 551 other customers had been monitored). We conclude the trial court could reasonably determine the potential for abuse of the class action procedure was not significant in the circumstances of this case. Although we are cognizant of possible abuse of the class action procedure in certain circumstances, we believe trial courts, in applying the *Parris* balancing test and properly exercising their discretion, will deny precertification discovery in those cases in which that potential abuse of the class action procedure outweighs the rights of the class members.

■ Based on the circumstances in this case, the trial court did not abuse its discretion by concluding the rights of the class members outweighed the potential for abuse of the class action procedure.[12] Our conclusion is limited

[12] To the extent CashCall alternatively phrases its abuse-of-discretion contention in terms of a lack of sufficient evidence to support the trial court's conclusion, we reject that contention based on the substantial evidence that supports the trial court's decision.

to the discovery issue in this case and we express no opinion on the merits of plaintiffs' case, which is not at this time in issue.

## C

We, like the trial court, conclude *First American, supra,* 146 Cal.App.4th 1564, does not require a different result. Applying the *Parris* balancing test, *First American* concluded the trial court abused its discretion by granting the motion of the class representative plaintiff for precertification discovery of the identities of class members.[13] (*First American, supra,* 146 Cal.App.4th at pp. 1576–1577.) Although, like in this case, the class representative plaintiff in *First American* never had standing, the circumstances in that case were significantly different from those here. The rights of the class members in *First American* had already been enforced by state agency action prior to the plaintiff's filing of the class action. By February 21, 2005, the Colorado Division of Insurance had conducted an investigation into the defendant's alleged illegal kickback scheme and announced it had reached a settlement with the defendant, requiring the defendant to both cease the scheme and pay full restitution to all consumers (in California and other states) harmed by that scheme. (*Id.* at p. 1567.) Also, in January 2005, the California Department of Insurance began a parallel investigation into the defendant's alleged illegal kickback scheme.[14] (*First American, supra,* 146 Cal.App.4th at p. 1567.) However, it was not until February 25, 2005, that the plaintiff first filed a class action complaint against the defendant. (*Ibid.*) It was subsequently revealed that no kickback had been paid by the defendant in connection with the policy it issued to the plaintiff and, therefore, the plaintiff was never a class member and did not have standing as a plaintiff in the class action. (*Id.* at pp. 1568–1571.) The plaintiff filed a motion for an order requiring the defendant to provide precertification discovery of all California homeowners compensated by the defendant pursuant to its settlement with the California Department of Insurance. (*Id.* at pp. 1570–1571.) The plaintiff conceded he did not have standing, was not a member of the class, and brought the motion to seek a new class representative. (*Id.* at pp. 1571–1572.)

---

[13] Although *First American* contains language that, arguably, applied the bright-line rule proposed by CashCall, our reading of that entire opinion shows the court applied the *Parris* balancing test. (*First American, supra,* 146 Cal.App.4th at p. 1573 ["Can a plaintiff who purports to bring a cause of action on behalf of a class of which he was *never* a member obtain precertification discovery to find a new class representative? Framed as such, the answer must be 'no.' "].)

[14] On July 25, 2005, the California Department of Insurance announced a settlement agreement with the defendant and eight other title insurance companies that allegedly had been engaged in illegal kickback schemes, which settlement required the defendant to pay the same amount to California consumers as required pursuant to the defendant's prior settlement with the Colorado Division of Insurance (i.e., a total of $15 million) as " 'a full refund of the ceded premium.' " (*First American, supra,* 146 Cal.App.4th at p. 1568.)

Without expressly applying the *Parris* balancing test, the trial court granted the plaintiff's motion for precertification discovery. (*First American*, at pp. 1572, 1576.) In granting the defendant's petition for writ of mandate challenging that order, *First American* stated:

"In this case, while the trial court did not expressly engage in the *Parris* weighing process, it is unnecessary to remand for the trial court to do so. In light of the complete record presented to this court . . . we have no trouble concluding that the potential abuse of the class action procedure greatly outweighs the rights of the parties under the circumstances. [¶] . . . [¶]

". . . The scope of [the plaintiff's] fishing expedition is illustrated by [his] claim that he needed the names and addresses of all individuals implicated by the settlement because he 'must . . . contact these individuals to determine whether they received their refunds and, if so (1) how those refunds were received and (2) whether they adequately compensated for damages.' [The plaintiff] had apparently appointed himself enforcement officer for the California Department of Insurance settlement agreement; the fact that [the plaintiff] was, at this time, *an acknowledged stranger* to that agreement did not restrain his efforts in any way. [¶] California law is clear that a representative plaintiff must be a member of the class he seeks to represent . . . . We cannot permit attorneys to make an 'end-run' around Proposition 64 [i.e., new standing requirement for unfair business practice causes of actions] by filing class actions in the name of private individuals who are not members of the classes they seek to represent and then using precertification discovery to obtain more appropriate plaintiffs." (*First American, supra*, 146 Cal.App.4th at pp. 1576–1577, fn. omitted.) *First American* then considered the rights of the parties in that case, stating: "Balanced against this potential abuse of the class action procedure are the rights of the parties under the circumstances. [The plaintiff's] interest in obtaining a proper plaintiff to represent the class is nonexistent. [The plaintiff] is not a member of the class and never has been; he has no cognizable interest in seeing this class action proceed. We acknowledge that the members of the putative class may have an interest in pursuing the class action. However, we are not blind to the fact that this is not a case in which [the plaintiff] has uncovered an apparent wrongdoing that will remain unaddressed without this class action. Indeed, [the plaintiff] only filed his complaint *after* Colorado had entered into a settlement with [the defendant] providing for full refunds to be made to customers nationwide. The California Department of Insurance similarly sought to make certain California insureds were properly compensated. Any further legal action can be pursued by members of the class, if they so desire. [The plaintiff] makes no argument that any future action they might pursue would be time-barred, or offer any other reason why the class members might be denied relief if *this action* is unable to proceed on their behalf." (*First American, supra*, 146 Cal.App.4th at p. 1577, fn. omitted.) Applying the

*Parris* balancing test, *First American* concluded: "In short, the potential for abuse of the class action procedure is overwhelming, while the interests of the real parties in interest are minimal. Precertification discovery under these circumstances would be an abuse of discretion." (*Id.* at p. 1577.)

Although we do not disagree with *First American*'s conclusion that precertification discovery in the circumstances of that case would have been an abuse of discretion, the circumstances in our case are substantially different from those in *First American* and do not show the trial court in this case abused its discretion by granting plaintiffs' motion for precertification discovery. Most importantly, the rights of the class members under the *Parris* balancing test were significantly different between *First American* and this case. In *First American*, the class members' rights against the defendant had already been protected and enforced through state agency investigations and settlements with the defendant. In this case, there is nothing in the record showing there is any governmental or other investigation regarding CashCall's alleged violations of the class members' privacy rights. Absent precertification discovery and continuation of this class action, it appears unlikely any of the class members will have a realistic opportunity to assert claims, and potentially obtain relief, for CashCall's alleged violations.

Furthermore, unlike the class members in *First American*, in this case only defendant (CashCall) has knowledge of the names and contact information of the class members. Because of the secret nature of CashCall's monitoring of calls between its collection employees and the class members and the lack of any state or other investigation into its alleged illegal conduct, the class members presumably are unaware that their calls were monitored or that they have potential causes of action against CashCall for violation of their privacy rights. In *First American*, the class action was essentially superfluous or unnecessary because the class members had already received, or would receive, full restitution for the defendant's alleged kickback scheme pursuant to the state agency investigations and settlements and also presumably had actual or constructive knowledge of those violations so they could take any further action they deemed appropriate themselves rather than through the plaintiff's class action. In this case, plaintiffs' class action cannot be considered superfluous or unnecessary. The record does not show there has been any state or other investigation of CashCall's conduct. The class members have not received any compensation for CashCall's alleged violations of their privacy rights, and the class members, at this time, do not have any actual or constructive knowledge of CashCall's alleged violations of their privacy rights.

Finally, unlike in *First American*, plaintiffs in this case argued, and the trial court noted, there are potential statute of limitations problems (e.g., Code Civ. Proc., § 340) that could bar the class members from asserting causes of action against CashCall were the instant class action to be dismissed for lack of a representative plaintiff. Therefore, unlike the rights of the class members in *First American*, the rights of the class members in this case are quite significant and, absent precertification discovery and potential continuation of this class action, those rights may go unasserted without their knowledge of CashCall's alleged privacy right violations. Accordingly, absent precertification discovery, CashCall may essentially receive a windfall by escaping any scrutiny of, and potential liability for, its secret call monitoring program that allegedly violated the class members' privacy rights.

Unlike in *First American*, we conclude the potential for abuse of the class action procedure is not significant in this case. In *First American*, the plaintiff essentially "appointed himself enforcement officer for the California Department of Insurance settlement agreement" and "piggybacked" his class action onto that settlement agreement (possibly to obtain attorney fees). (*First American, supra*, 146 Cal.App.4th at p. 1577.) That scenario appears to exemplify the classic type of abusive class action of which CashCall warns. However, those circumstances do not exist in this case. There is no state or other investigation, much less a settlement, involving CashCall's secret call monitoring program. Absent continuation of the instant class action, there likely will be no other investigation of CashCall's conduct or potential relief obtained by class members for its alleged violations of their privacy rights. Furthermore, because only CashCall has knowledge of which customers' calls were monitored, plaintiffs cannot be faulted for filing a class action based on the suspicion their privacy rights may have been violated and only later learning from CashCall that their calls had not been monitored (and therefore they do not have standing). Accordingly, unlike in *First American*, the potential for abuse of the class action procedure in this case is minimal. Neither the reasoning nor the result in *First American* persuades us that the trial court in this case abused its discretion by granting plaintiffs' motion for precertification discovery of the identities of class members.[15] Rather, we conclude the trial court, in applying the *Parris* balancing test, did not abuse its discretion.

---

[15] Because *Cryoport Systems v. CNA Ins. Cos., supra*, 149 Cal.App.4th 627, cited by CashCall, appears, in dicta, to simply follow *First American*'s reasoning, we need not discuss it and are not persuaded by that case to reach a contrary result.

## DISPOSITION

The petition for writ of mandate is denied. Our stay of the trial court proceedings issued on July 27, 2007, is vacated. Because this is an interim proceeding, we do not award costs to either party. At the conclusion of the litigation, the trial court shall determine whether costs incurred in these writ proceedings should be awarded to either party.

McIntyre, J., and O'Rourke, J., concurred.

Petitioner's petition for review by the Supreme Court was denied April 9, 2008, S161405.