[No. G039700. Fourth Dist., Div. Three. Dec. 10, 2008.]

STARBUCKS CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ERIK LORDS et al., Real Parties in Interest.

1438

Counsel

Akin Gump Strauss Hauer & Feld, Rex S. Heinke, Catherine A. Conway and Jessica M. Weisel for Petitioner.

No appearance for Respondent.

Arias Ozzello & Gignac, H. Scott Leviant, Mike Arias, Mikael Stahle and Jason E. Barsanti for Real Parties in Interest.

Opinion

**IKOLA, J.**—Petitioner Starbucks Corporation (Starbucks) petitions for a writ of mandate directing the trial court to vacate its order denying Starbucks's motion for summary judgment, and to enter a new order granting the motion.

Real parties in interest Erik Lords, Hon Yeung, and Donald Brown (collectively plaintiffs) represent a class of some 135,000 unsuccessful job applicants at Starbucks. They allege that the Starbucks employment application contains an "illegal question" about prior marijuana convictions that are more than two years old. They seek statutory damages of $200 per applicant—a remedy which, by Starbucks's estimation, could total a whopping $26 million.

Plaintiffs' lawsuit suffers from two fundamental flaws, either of which provides ample grounds for writ relief. First, Starbucks attempted to disclaim an interest in such prohibited information, and two of the plaintiffs understood Starbucks not to be seeking it. Second, no plaintiff had any marijuana-related convictions to reveal.

Nothing in the statutes in question authorizes job applicants to automatically recover $200 per person without proof they were aggrieved persons with an injury the statute was designed to remedy.

I

Factual and Procedural Background

Starbucks uses the same two-page job application form nationwide for store-level employees. The application's first page includes a question (the "convictions question"), which asks: "Have you been convicted of a crime in the last seven (7) years?" It further explains: "If Yes, list convictions that are

a matter of public record (arrests are not convictions). A conviction will not necessarily disqualify you for employment."

The reverse side of the Starbucks application contains various disclaimers for United States applicants, as well as three different states: Maryland, Massachusetts, and California. These disclaimers are located in a 346-word paragraph directly above the signature line. The California portion of the disclaimer provides: *"CALIFORNIA APPLICANTS ONLY: Applicant may omit any convictions for the possession of marijuana (except for convictions for the possessions of marijuana on school grounds or possession of concentrated cannabis) that are more than two (2) years old, and any information concerning a referral to, and participation in, any pretrial or post trial diversion program."*[1]

In June 2005 plaintiffs filed their class action lawsuit on behalf of an estimated 135,000 Starbucks job applicants who sought jobs at some 1,500 Starbucks locations throughout California. Plaintiffs contended that the convictions question on the Starbucks application is illegal under California law, which prohibits employers from asking about marijuana-related convictions

---

[1] The pertinent paragraph on the Starbucks application provides, in full: "I hereby authorize Starbucks to thoroughly investigate my background, references, employment record and other matters related to my suitability for employment. I authorize persons, schools, my current employer (if applicable), and previous employers and organizations contacted by Starbucks to provide any relevant information regarding my current and/or previous employment and I release all persons, schools, employers of any and all claims for providing such information. I understand that misrepresentation or omission of facts may result in rejection of this application, or if hired, discipline up to and including dismissal. I understand that I may be required to sign a confidentiality and/or non-compete agreement, should I become an employee of Starbucks Coffee Company. I understand that nothing contained in this application, or conveyed during any interview which may be granted, is intended to create an employment contract. I understand that filling out this form does not indicate there is a position open and does not obligate Starbucks to hire me. (*U.S. APPLICANTS ONLY: I understand and agree that my employment is at will, which means that it is for no specified period and may be terminated by me or Starbucks at any time without prior notice for any reason. MARYLAND APPLICANTS ONLY: Under Maryland law, an employer may not require or demand, as a condition of employment, prospective employment, or continued employment, that an individual submit to or take, a lie detector or similar test. An employer who violates this law is guilty of misdemeanor and subject to a fine not exceeding $100. MASSACHUSETTS APPLICANTS ONLY: It is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability.*) CALIFORNIA APPLICANTS ONLY: Applicant may omit any convictions for the possession of marijuana (except for convictions for the possessions of marijuana on school grounds or possession of concentrated cannabis) that are more than two (2) years old, and any information concerning a referral to, and participation in, any pretrial or post trial diversion program.*"

The disclaimer for "U.S. applicants" leads us to surmise that the Starbucks application may be used for Starbucks international locations as well.

that are more than two years old. Plaintiffs sought to recover actual damages or $200 each, whichever was greater. (Lab. Code, §§ 432.7, subd. (c), 432.8.)[2]

Plaintiffs contended that the California disclaimer was "buried within a block of type," did not specifically refer to the convictions question, and was placed near the end of the document. They feared that applicants either would overlook the disclaimer, or would not want to go back and cross out their previous responses or ask for a clean copy.

Plaintiffs each applied for a job at Starbucks in early 2005 by filling out a job application. None had a marijuana arrest or conviction. None was hired.

Lords read the entire Starbucks application, including the California disclaimer. He understood the clause to mean that he did not need to report a marijuana conviction more than two years old. He truthfully answered "No" to the convictions question. He had no prior marijuana convictions: "I've never smoked it in my life." Lords explained that he was bringing the lawsuit "for other people." Lords said he did not have a personal stake in the matter, and did not believe that he was not hired because of his truthful answer to the convictions question.

Yeung read the entire application, including the California disclaimer, and understood it to mean that he was not required to disclose any information regarding marijuana convictions more than two years old. Yeung had no such arrests or convictions. Despite this, he wrote the following response to the question regarding convictions: "I refuse to answer."

Brown made a similar response to the convictions question on his Starbucks application. Although he never had been arrested for a crime, and has never used marijuana, Brown responded to the convictions question, "Refuse to answer!" As he explained, "[I]t's no one's business."

The court certified a class of all California applicants who submitted an employment application to Starbucks with the convictions question since June 23, 2004, and who each seek no more than $200 in damages. The court determined that "[t]he mere offering of the application containing the impermissible question is a violation of the Labor Code. [¶] Damages may be calculated simply by multiplying the probable number of applicants during the class period times $200.00."

The court denied Starbucks's motion for summary judgment. The court determined that the convictions question on its face violated sections 432.7,

---

[2] All statutory references are to the Labor Code unless otherwise indicated.

subdivision (c) and 432.8, and doubted the legal sufficiency of the California disclaimer. "A triable issue of material fact remains whether the location of the limiting language on the application, the size of the font in which the limitation is printed, and the location of the limitation within the block paragraph is sufficient to alert a reasonable job applicant that the question concerning criminal convictions does not apply to marijuana related convictions more than two years old." The court questioned whether an average applicant would see the California disclaimer, because the location and font size (which the court guessed to be eight point) was "not effective to draw the attention of the job applicant."

The court concluded that plaintiffs had standing to assert the statutory violation "based on the fact they were given the job application containing the offending question when applying for employment with the defendant. . . . [¶] The plain language of those sections establishes a strict liability standard of conduct where a job applicant seeks to recover only the minimum statutory damage amount of $200." The court determined that proof of damages was not a necessary element to plaintiffs' ability to recover the statutory minimum of $200 per applicant.

The court granted summary adjudication in favor of Starbucks on a separate cause of action for violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.). The court reasoned that "none of the plaintiffs has lost money or property as a result of the alleged unfair or unlawful conduct. [Citations.] Plaintiffs offer no evidence or argument . . . that any of them has lost money or property."

Starbucks filed a petition for writ of mandate from the order denying summary judgment. Starbucks declared that, given the size of the class, "this litigation poses such great monetary risks to Starbucks (at least $26 million) that it may be forced to settle rather than risk an adverse judgment." We issued an order to show cause why a summary judgment should not be granted and stayed the proceedings below.

II

LEGAL SUFFICIENCY OF THE STARBUCKS APPLICATION

Section 432.8 was enacted during the 1970's as part of comprehensive reform legislation which was designed to distinguish minor marijuana offenses from more serious felony drug offenses and to "minimize or eliminate the lingering social stigma flowing from what is now perceived to be a relatively minor form of criminal activity." (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].)

 California law already had prohibited employers from asking job applicants about arrests that did not result in a conviction. The statute prohibits employers from soliciting such disclosure "through any written form or verbally . . . ." (§ 432.7, subd. (a).)[3] The marijuana reform legislation extended this prohibition to marijuana convictions that are more than two years old. (§ 432.8.)[4]

Starbucks says that its employment application, as a matter of law, complies with the California statutory scheme, and cannot be construed to ask applicants to disclose information about marijuana convictions "it expressly tells them not to disclose."

 We disagree. We see no problem with the language of the California disclaimer, but we see significant problems with its placement. Had Starbucks included the California disclaimer immediately following the convictions question, Starbucks would have been entitled to a summary judgment in its favor on the reasonableness of the employment application. (See, e.g., *Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62 [79 Cal.Rptr.2d 902] [release clause in health club agreement clear and unambiguous as a matter of law]; *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 [13 Cal.Rptr.3d 68, 89 P.3d 381] [to be enforceable, limiting language must be conspicuous, plain and clear, and "placed and printed so that it will attract the reader's attention"].)

But we cannot accept Starbucks's assurances that this "clear and conspicuous" test is satisfied by its placement of the California disclaimer at the very end of a 346-word paragraph, with a "U.S." disclaimer, followed by a host of

---

[3] Section 432.7, subdivision (a) provides: "No employer, whether a public agency or private individual or corporation, shall ask an applicant for employment to disclose, through any written form or verbally, information concerning an arrest or detention that did not result in conviction, or information concerning a referral to, and participation in, any pretrial or posttrial diversion program, nor shall any employer seek from any source whatsoever, or utilize, as a factor in determining any condition of employment including hiring, promotion, termination, or any apprenticeship training program or any other training program leading to employment, any record of arrest or detention that did not result in conviction, or any record regarding a referral to, and participation in, any pretrial or posttrial diversion program. As used in this section, a conviction shall include a plea, verdict, or finding of guilt regardless of whether sentence is imposed by the court. Nothing in this section shall prevent an employer from asking an employee or applicant for employment about an arrest for which the employee or applicant is out on bail or on his or her own recognizance pending trial."

[4] Section 432.8 provides: "The limitations on employers and the penalties provided for in Section 432.7 shall apply to a conviction for violation of subdivision (b) or (c) of Section 11357 of the Health and Safety Code or a statutory predecessor thereof, or subdivision (c) of Section 11360 of the Health and Safety Code, or Section 11364, 11365, or 11550 of the Health and Safety Code as they related to marijuana prior to January 1, 1976, or a statutory predecessor thereof, two years from the date of such a conviction."

irrelevant provisions from states like Maryland and Massachusetts.[5] Starbucks emphasizes that its California disclaimer is placed in boldface type, but so are the U.S., Maryland, and Massachusetts disclaimers. Any value to be gained by emphasis is submerged in a veritable sea of boldface type.

Starbucks's counsel himself recognized below that the legal issue involved whether "a reasonable job applicant [would] see the caveat." As counsel conceded during argument on class certification: "Now whether somebody could reasonably not read [the California disclaimer], and reasonably take the application on its face and believe they were [re]quired to disclose marijuana convictions, we say no, but *we understand that that may be a dispute*." (Italics added.)

It seems to us that a reasonable Starbucks applicant could look at the convictions question and believe that it meant what it said: "Have you been convicted of a crime in the last seven (7) years?" We cannot say with certainty that such a hypothetical applicant would notice the misplaced California disclaimer on the back side. Truthful applicants in our hypothetical situation should be able to recover their actual damages or the statutory minimum, either because they were forced to reveal stigmatizing private information, or because they declined to respond with such information at a possible cost of a lost job opportunity. Starbucks's interpretation, in contrast, would deny *any* damage recovery to such applicants. This clearly is contrary to both the letter and intent of sections 432.7 and 432.8.

The unintended consequence of Starbucks's one-size-fits-all style for its employment applications is a lack of the clarity for which California law strives. We cannot say, as a matter of law, that the Starbucks application unambiguously directs applicants not to disclose prohibited marijuana-related convictions.

### III

#### PLAINTIFFS' ENTITLEMENT TO RECOVERY

Our determination that the Starbucks application may present an ambiguity to the average California job seeker is only the start, not the end, of our inquiry. While a potential violation of the marijuana reform legislation may be "in the air" because of potential ambiguities in the California disclaimer, the question remains, on summary judgment, whether there are triable issues of fact to bring it "down to earth," and to specifically bring plaintiffs, and the

---

[5] The disclaimers are not even listed in alphabetical order; California inexplicably follows Maryland and Massachusetts.

tens of thousands of class members they purport to represent, within the class of persons intended to be benefitted by the statutory cause of action in section 432.7, subdivision (c).

■ Starbucks raises two obstacles to plaintiffs' attempts to recover $200 for themselves and the other class members. First, Starbucks argues that the California disclaimer, even if ambiguous, was not ambiguous as to plaintiffs, two of whom testified at their depositions to sharing the same understanding of the application as did Starbucks. Second, Starbucks argues that none of the plaintiffs are entitled to an automatic $200 recovery because none had any marijuana convictions to disclose. The points are well taken.

A. *Lack of Ambiguity As to Plaintiffs Lords and Yeung*

While the wording of the Starbucks application may establish a potential ambiguity in the abstract, there is no evidence that it made any difference in how Lords and Yeung filled out their job applications. There is no evidence that either of them believed that he was being asked to disclose marijuana-related convictions that were more than two years old.

Both Lords and Yeung admitted during their respective deposition testimony that they read the Starbucks application, including the California disclaimer, and understood the application did not ask for information about marijuana-related convictions more than two years old. Each testified he knew he did not have to disclose information regarding marijuana convictions more than two years old.

The court expressed the view that "[plaintiffs'] understanding is immaterial . . . ." Instead, the court took the position that "it's not a particular finding or state of mind of the job applicant in the particular case. It's—because the identified social problem that the Legislature has sought to address here is the mere asking of the improper question."

■ The evidence of Lords's and Yeung's understanding in their deposition testimony is dispositive of the ambiguity issue as to them since they offered no extrinsic evidence to contradict it. While words "frequently mean different things to different people," courts have no problem enforcing provisions as to parties who "demonstrated by their actions that they knew what the words meant and were intended to mean." (*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 754 [8 Cal.Rptr. 427, 356 P.2d 171]; see also Civ. Code, § 3538 ["That is certain which can be made certain."].)

■ By analogy, California does not sanction lawsuits for fraudulent misrepresentations brought by persons who, rather than having been deceived, act for the sole purpose of bringing a lawsuit against "potential targets

for litigation." (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 807 [66 Cal.Rptr.3d 543] (*Buckland*).) " 'The maker of a fraudulent misrepresentation is not liable to one who does not rely upon its truth but upon the expectation that the maker will be held liable in damages for its falsity.' " (*Id.* at p. 808.) "[A]ctual reliance for the purpose of fraud by omission occurs only when the plaintiff reposes confidence in the *material completeness* of the defendant's representations, and acts upon this confidence." (*Ibid.*)

In *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644 [22 Cal.Rptr.2d 419], a consumer sought to represent millions of other grocery shoppers in a class action lawsuit based on a company's false representations about its "Citrus Hill Fresh Choice" orange juice products, which in fact were reconstituted from frozen concentrate. Yet, the consumer's own deposition testimony showed that he did not believe the orange juice was "fresh." Under these circumstances, the Court of Appeal affirmed the trial court's determination that the consumer was not a proper class representative of shoppers who had been deceived into believing they were buying "fresh" juice. "Although [the consumer] alleged the class was deceived into believing defendants' product was 'fresh,' the evidence indicated he himself believed the juice was simply 'premium.' Because [he] did not claim to be misled in the manner the class was allegedly deceived, the court could not 'decide the issue of the rights of such individuals that might possibly exist.' " (*Id.* at p. 664.)

There are practical reasons why Lords's and Young's actual understanding is critical. Without it, there would be nothing to stop them from freely roaming throughout the state "as knights *errant amici* searching for deficiencies . . . where no harm has been caused them or anyone else as a result . . . ." (*Rodriguez v. City of Passaic* (D.N.J. 1990) 730 F.Supp. 1314, 1321.) This could create a whole new category of employment—professional job seekers, whose quest is to voluntarily find (and fill out) job applications which they know to be defective solely for the purpose of pursuing litigation. This is not the law in California. (*Buckland, supra,* 155 Cal.App.4th at p. 808.)

Starbucks having carried its initial burden of production on summary judgment to show that Lords and Yeung were not confused by the Starbucks application, these plaintiffs have failed to show the existence of a triable issue of material fact on ambiguity. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

B. *Absence of Aggrieved Plaintiffs*

Plaintiffs, who had no marijuana convictions to disclose, are not members of a legally protected group. Plaintiffs are not similarly situated to persons

whose minor drug histories were wrongly revealed on improper job applications, or who refused to disclose such offenses in response to the convictions question, and who therefore may be entitled to actual damages or the statutory minimum.

 Where civil liability is predicated upon a legislative provision (here, §§ 432.7 & 432.8), plaintiffs must establish that they fall within the class of persons for whose protection the legislative provision was enacted. "The statute must be designed to protect against the *kind of harm* which occurred." (*Wawanesa Mutual Ins. Co. v. Matlock* (1997) 60 Cal.App.4th 583, 587 [70 Cal.Rptr.2d 512] [statutory prohibition against furnishing tobacco to minors not intended to protect victims of fire caused by dropped cigarette]; see also *Capolungo v. Bondi* (1986) 179 Cal.App.3d 346 [224 Cal.Rptr. 326] [yellow curb parking zone intended to provide curb access for loading, not to promote traffic safety].)

Plaintiffs have not contested the trial court's determination that they lost neither money nor property as a result of Starbucks's allegedly unlawful conduct. Instead, they take the position that they, like every person within the class of Starbucks job applicants, are automatically entitled to a minimum of $200 simply because they filled out the job application. In their verified return to the petition, plaintiffs assert that they are "entitled to receive $200 as a *statutory penalty* for completing an application that violates Labor Code section 432.7." (Italics added.) Later in the same document, plaintiffs describe the $200 recovery as a "*statutory minimum damage* provision for any person who is asked a question violating LABOR CODE sections 432.7 and 432.8 . . . ." (Italics added.)

 Section 432.7, subdivision (c) does not expressly provide that *any* applicant may recover a minimum of $200 as a statutory penalty for an employer asking a prohibited question on a job application, regardless of any nexus to a marijuana conviction lurking somewhere in his or her past. Had the Legislature intended to bestow a cause of action for an automatic recovery of $200 upon "any" applicant, it easily could have done so. Instead, the statute ambiguously provides that, for violations of section 432.8, "the applicant may bring an action to recover from that person actual damages *or* two hundred dollars ($200) . . . ." (§ 432.7, subd. (c), italics added.) The statute also provides that an *intentional* violation is a misdemeanor, punishable by a $500 fine, entitling applicants to the greater of "treble actual damages, or five hundred dollars ($500) . . . ." (*Ibid.*)[6]

---

[6] Section 432.7, subdivision (c) provides, in full: "In any case where a person violates this section, or Article 6 (commencing with Section 11140) of Chapter 1 of Title 1 of Part 4 of the Penal Code, the applicant may bring an action to recover from that person actual damages or two hundred dollars ($200), whichever is greater, plus costs, and reasonable attorney's fees. An

■ We have examined the language in section 432.7, subdivision (c), and conclude that plaintiffs do not fall within the class of persons intended to be protected by the marijuana reform legislation. The Legislature intended " 'to minimize or eliminate the lingering social stigma flowing from what is now perceived to be a relatively minor form of criminal activity. [Citation.] The intent is to insure that once the offender has paid his prescribed debt to society, he not be further penalized by curtailment of his opportunities for rehabilitation, education, employment, licensing, and business or professional advancement.' " (*Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987, 1004–1005 [176 Cal.Rptr. 569] (*Hooper*).)

Only an individual with a marijuana-related conviction falls within the class of people the Legislature sought to protect. We see nothing in the statute to support plaintiffs' claim that the Legislature intended to protect the privacy interests of job applicants who had no marijuana convictions in their background. As we explain below, we decline to adopt an interpretation that would turn the statute into a veritable financial bonanza for litigants like plaintiffs who had no fear of stigmatizing marijuana convictions.

■ Under well-settled rules of statutory construction, we resolve the ambiguity according to the usual, ordinary import of the language, and to avoid absurd consequences, including an unconstitutionally excessive penalty. "It is a well-settled maxim of statutory construction that 'a statute is to be construed in such a way as to render it "reasonable, fair and harmonious with [its] manifest [legislative] purposes . . . ." [citations], and the literal meaning of its words must give way to avoid harsh results and mischievous or absurd consequences.' " (*Kinney v. Vaccari* (1980) 27 Cal.3d 348, 357 [165 Cal.Rptr. 787, 612 P.2d 877] [interpreting "tenant" in a statute that allowed each "tenant" who was willfully deprived of utility services to recover actual damages, plus $100 per day, to jointly apply to the adult residents of each unit, rather than to the individuals living in each unit]; see *Kramer v. Intuit Inc.* (2004) 121 Cal.App.4th 574, 579 [18 Cal.Rptr.3d 412] [statutes must be read " 'to avoid absurd results' "].)

Recently, in *Jones v. The Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158 [72 Cal.Rptr.3d 624, 177 P.3d 232] (*Jones*), the California Supreme Court held that nonemployer individuals were not personally liable for retaliation even though the statute in question used the word " 'person' " in addition to " 'employer' " to describe who could be sued. (*Id.* at pp. 1161–1162.) The court concluded that this statutory language was not as

intentional violation of this section shall entitle the applicant to treble actual damages, or five hundred dollars ($500), whichever is greater, plus costs, and reasonable attorney's fees. An intentional violation of this section is a misdemeanor punishable by a fine not to exceed five hundred dollars ($500)."

plain as it seemed given the " ' "potentially severe adverse effects" ' " and " ' "minimal potential . . . benefit[s]" ' " of imposing personal liability on individual supervisory employees. (*Id.* at p. 1165.) If the Legislature intended to impose such drastic results, the court reasoned, " ' "the Legislature would have done so by language much clearer than that used here." ' " (*Id.* at p. 1166.)

The leading case involving a statutory penalty is *Hale v. Morgan* (1978) 22 Cal.3d 388 [149 Cal.Rptr. 375, 584 P.2d 512] (*Hale*). There the California Supreme Court narrowly construed the term "deprived" in a statute allowing for a mandatory statutory penalty of $100 per day for tenants who were "deprived" of utility services. "Because the statute is penal, we adopt the narrowest construction of its penalty clause to which it is reasonably susceptible in the light of its legislative purpose." (*Id.* at p. 405.) The court refused to sanction an interpretation that was wholly disproportionate to any discernible legislative goal. "The exercise of a reasoned discretion is replaced by an adding machine. The challenged statute mandates essentially that a single wrongful act by the landlord, if not corrected, will subject him to potentially infinite penalties, regardless of the circumstances of the violation, the offender, the victim or the damage caused." (*Id.* at p. 402.)

In *Balmoral Hotel Tenants Assn. v. Lee* (1990) 226 Cal.App.3d 686 [276 Cal.Rptr. 640], the Court of Appeal reversed a wrongful eviction award of $4.8 million in favor of three tenants because the award wrongly included a statutory penalty of treble damages for mental anguish. The court found that the term " 'actual damages' " was "unquestionably ambiguous." (*Id.* at p. 697.) The court refused to sanction mandatory penalties of such disproportionate culpability as to be constitutionally excessive. "No doubt the chance of securing a windfall judgment might provide some incentive for representing low-income tenants, but such an aleatory incentive is offensive to the policy of equal justice." (*Id.* at p. 695.)

In *Miller v. Collectors Universe, Inc.* (2008) 159 Cal.App.4th 988 [72 Cal.Rptr.3d 194], we interpreted a statute that ambiguously called for liability in a wrongful appropriation case of the greater of " 'seven hundred fifty dollars ($750) or the actual damages suffered by [the plaintiff] *as a result of the unauthorized use . . . .* ' " (*Id.* at p. 1000.) Because the defendant made some 14,060 separate unauthorized uses of the plaintiff's name, the plaintiff elected not to prove any actual damages, but argued he was entitled to statutory damages exceeding $10 million based on the per-copy statutory multiplier. Applying basic precepts of statutory construction, we determined that the statute was " 'based upon the *injury* to the plaintiff,' " with the minimum statutory damages "intended to remedy . . . the alleged injury to his mental feelings and peace of mind . . . ." (*Id.* at p. 1005.)

In *Ventura County Ry. Co. v. Hadley Auto Transport* (1995) 38 Cal.App.4th 878 [45 Cal.Rptr.2d 362], the court determined that a railroad was not a "person" for purposes of the provision in the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.), allowing "any person" alleging discrimination on the basis of disability to bring suit to enforce the action. The railroad, whose train collided with a truck, cross-complained against the accident victim's employer for an ADA violation. Although the railroad technically qualified under the ADA's broad statutory definition of "person," the court held it had no substantive rights to pursue: "There may be nothing expressed in the enforcement section of the ADA to eliminate such a conclusion. But such a conclusion would surely lie well outside the boundaries of common sense. A statute must be construed to render it reasonable; the literal meaning of its words must give way to avoid absurd consequences." (*Ventura County Ry. Co.*, at p. 881.)

In *Consumer Defense Group v. Rental Housing Industry Members* (2006) 137 Cal.App.4th 1185 [40 Cal.Rptr.3d 832] (*Consumer Defense Group*), we were called upon to interpret the statutory provisions for approving a settlement in a Proposition 65 case, and specifically whether the enumerated factors were exclusive. We interpreted the statutes "as part of the whole of the statutory scheme in which they appear." (137 Cal.App.4th at p. 1208.) We spoke of the harsh burdens posed by "shakedown" lawsuits brought by "self-proclaimed bounty hunters," which "represent a needless expense imposed on businesses in California without any corresponding genuine public benefit . . . ." (*Id.* at pp. 1219, 1189, 1220.)

Applying these principles of statutory construction, we narrowly interpret section 432.7, subdivision (c) in accordance with the traditional principle that the applicant be a person who has been *aggrieved* by the statutory violation. Any other construction would produce the absurd result of turning the statute into the veritable "adding machine" that has been decried by our Supreme Court. (*Hale, supra*, 22 Cal.3d at p. 402.) If the legislators who enacted the marijuana reform legislation in the mid-1970's intended to confer a right to automatic damages upon *all* job applicants, regardless of actual injury, we doubt they would have been so opaque in their draftsmanship. " 'The Legislature "does not, one might say, hide elephants in mouseholes." ' " (*Jones, supra*, 42 Cal.4th at p. 1171.)

We recently disapproved "the use of the very process of litigation to precipitate payoffs by private businesses for alleged violations of law having no real relationship to a true public interest." (*Consumer Defense Group, supra*, 137 Cal.App.4th at p. 1216, fn. 22.) There are better ways to filter out impermissible questions on job applications than allowing "lawyer bounty hunter[]" lawsuits brought on behalf of tens of thousands of unaffected job

applicants. (*Id.* at p. 1206.) Plaintiffs' strained efforts to use the marijuana reform legislation to recover millions of dollars from Starbucks give a bizarre new dimension to the everyday expressions "coffee joint" and "coffee pot."

Plaintiffs contend that a per se rule is necessary to protect the class of persons (persons convicted of minor marijuana crimes) whom the statute clearly is designed to protect. "[C]onstruing sections 432.7 and 432.8 as offering protection only [to] marijuana offenders would create the absurd result that this theoretical 'protected' group would be required to initiate civil litigation, create a public record of that litigation, and further relinquish their privacy to enforce the statute. In other words, the protections of sections 432.7 and 432.8 would be rendered illusory because the group to which Petitioner would limit those protections would have to abandon those protections to assert their rights."

Intentional violations of sections 432.7 and 432.8 are misdemeanors, subject not only to fines, but to statutory penalties of treble actual damages, or $500, whichever is greater. (§ 432.7, subd. (c).) The specter of potential criminal exposure sufficiently deters miscreant employers from improperly intruding into job applicants' protected zones of privacy.

Other means involving protective nondisclosure of identity (e.g., identifying a plaintiff by his or her initials or a pseudonym like "John Doe" or "Jane Doe") may be used in appropriate circumstances to protect persons convicted of relatively minor marijuana offenses from being further stigmatized. For example, in *Hooper, supra*, 122 Cal.App.3d 987, a person convicted of the lesser included offense of maintaining a place for the use or sale of a narcotic (stipulated to be marijuana) brought suit as a "John Doe" to determine whether he was entitled to the benefits and protections of the marijuana reform legislation. And, in *Doe v. Saenz* (2006) 140 Cal.App.4th 960 [45 Cal.Rptr.3d 126], a convicted robber, having obtained a certificate of rehabilitation, filed a civil suit as "Jane Doe 1" to challenge a state agency's refusal to allow her to work as a social worker with a licensed community care facility.[7]

---

[7] We do not decide the appropriate standards or mechanisms for protective nondisclosure of identity in California, because the matter is not now before us. (See Code Civ. Proc., § 367 [actions must be prosecuted in name of the real party in interest]; but see *Cherrigan v. City etc. of San Francisco* (1968) 262 Cal.App.2d 643, 652–653 [69 Cal.Rptr. 42] [allowing woman to prosecute wrongful death lawsuit in her former surname rather than her current "true" surname to avoid inadmissible inferences that she had remarried].)

The judicial use of "Doe plaintiffs" to protect legitimate privacy rights has gained wide currency, particularly given the rapidity and ubiquity of disclosures over the World Wide Web. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531 [67 Cal.Rptr.3d 330, 169 P.3d 559] [former Boy Scouts sued under pseudonyms based on allegations that city police officer sexually assaulted them while they were teenagers]; *Johnson v. Superior Court* (2000) 80

IV

## WHY A WRIT SHOULD ISSUE

This litigation is a paradigmatic example of when writ relief may be necessary from an order denying summary judgment. (Code Civ. Proc., § 437c, subd. (m)(1); Code Civ. Proc., § 1086.) Appeal from a judgment in this class action suit provides an inadequate remedy, Starbucks may suffer irreparable harm, and the matter is of widespread interest. (See *Interinsurance Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1225 [56 Cal.Rptr.3d 421].) "When the substantive theories and claims of a proposed class suit are alleged to be without legal or factual merit, the interests of fairness and efficiency are furthered when the contention is resolved in the context of a formal pleading (demurrer) or motion (judgment on the pleadings, summary judgment, or summary adjudication) that affords proper notice and employs clear standards." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 440 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

Given the size of the class, the potential exposure is so large that the pressure to settle may become irresistible. As we have noted, the verified petition has alleged as much regarding the "great monetary risks" to Starbucks. This is a valid concern: "Many corporate executives are unwilling to bet their company that they are in the right in big-stakes litigation, and a grant of class status can propel the stakes of a case into the stratosphere. . . . This interaction of procedure with the merits justifies an earlier appellate look. By the end of the case it will be too late—if indeed the case has an ending that is subject to appellate review." (*Blair v. Equifax Check Services, Inc.* (7th Cir. 1999) 181 F.3d 832, 834; see *Consumer Defense Group, supra,* 137 Cal.App.4th 1185.) " ' "Enhancing the prospects for obtaining a settlement on a basis other than the merits is hardly a worthy legislative objective . . . ." ' " (*Jones, supra,* 42 Cal.4th at p. 1166.) The civil justice system is not well served by turning Starbucks into a Daddy Warbucks.

---

Cal.App.4th 1050, 1072 [95 Cal.Rptr.2d 864] [parents entitled to depose sperm donor with family history of kidney disease, but donor's name protected from disclosure to outsiders through an appropriate order "which maintains the confidentiality of John Doe's identity . . . ."].) Doe designations may be appropriate even where sealing orders are not. (*H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879 [60 Cal.Rptr.3d 501].)

Federal courts allow parties to use pseudonyms "in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." (*Does I thru XXIII v. Advanced Textile Corp.* (9th Cir. 2000) 214 F.3d 1058, 1068.)

## V

### Disposition

Let a peremptory writ of mandate issue directing respondent The Superior Court of Orange County to vacate its order denying Starbucks's motion for summary judgment, and to issue a new and different order granting the motion for summary judgment. The temporary stay is lifted. Starbucks is entitled to costs.

Sills, P. J., and Rylaarsdam, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied February 25, 2009, S169834.