[No. G043650. Fourth Dist., Div. Three. Apr. 25, 2011.]

STARBUCKS CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ERIK LORDS et al., Real Parties in Interest.

---

## COUNSEL

Akin Gump Strauss Hauer & Feld, Rex S. Heinke, Catherine A. Conway, Gregory W. Knopp and Jessica M. Weisel for Petitioner.

No appearance for Respondent.

Arias Ozzello & Gignac, Mike Arias and Mikael H. Stahle for Real Parties in Interest.

---

## OPINION

**IKOLA, J.**—Can a purported remedy cause the very disease it is supposed to prevent? In this so-called "headless" class action, the answer regrettably is yes.

During the first administration of Governor Edmund G. Brown, Jr., in the mid-1970's, the California Legislature reformed the state's marijuana laws to require the "destruction" by "permanent obliteration" of all records of minor marijuana convictions that were more than two years old. Employers were prohibited from even asking about such convictions on their job applications, with statutory penalties of the greater of actual damages, or $200 per aggrieved applicant.

Real parties in interest are three individuals who brought a class action against petitioner Starbucks Corporation (Starbucks), seeking some $26 million in statutory penalties on behalf of an estimated 135,000 job applicants, because Starbucks's preprinted job application allegedly violated provisions of this marijuana reform legislation. In *Starbucks Corp. v. Superior Court* (2008) 168 Cal.App.4th 1436 [86 Cal.Rptr.3d 482] (*Starbucks I*), we held real parties in interest did not have standing to represent the proposed class because none had any marijuana convictions to reveal. We declined to turn the legislation into a "veritable financial bonanza for litigants like plaintiffs who had no fear of stigmatizing marijuana convictions." (*Id.* at p. 1449.)

Following our opinion, real parties in interest were dismissed as class representatives on summary judgment. One would have thought this class

action suit therefore had reached an end. However, the court permitted plaintiffs to file a first amended complaint to include only job applicants with marijuana convictions. The court also allowed class counsel to conduct further discovery to find a "suitable" class representative. To achieve this, Starbucks has been ordered to randomly review job applications until it identifies job applicants with prior marijuana convictions. Their names are to be disclosed to class counsel unless they affirmatively opt out to a neutral administrator.

■ By providing for the disclosure of job applicants with minor marijuana convictions, the discovery order ironically violates the very marijuana reform legislation the class action purports to enforce. We fail to understand how destroying applicants' statutory privacy rights can serve to protect them. We reverse the discovery order.

## I

### Factual and Procedural Background

In 2005, plaintiffs and real parties in interest Erik Lords, Hon Yeung and Donald Brown (collectively plaintiffs) each applied for a job at Starbucks. In June of that year, they filed a class action lawsuit against Starbucks on behalf of some 135,000 job applicants, alleging it failed to adequately advise job applicants not to disclose minor marijuana convictions more than two years old. (See Lab. Code, §§ 432.7, subd. (c), 432.8.)

None of the plaintiffs had been convicted of a marijuana-related crime. But they contended that California law allowed *any* job applicant to receive a minimum statutory penalty of $200 per applicant if they filled out an improper job application.

The trial court agreed. In November 2007, the court certified a class of all persons who applied to work at Starbucks since mid-2004. The court held that all job applicants, even those who never had sustained a marijuana conviction, were entitled to the $200 statutory penalty. Indeed, job applicants who sustained actual damages because their privacy was invaded were *excluded* from the class. No notice was given to these putative class members.

In *Starbucks I, supra,* 168 Cal.App.4th 1436, we held that neither plaintiffs nor the tens of thousands of job applicants they purported to represent were entitled to recover statutory penalties where they did not have any marijuana convictions to disclose. We stated, "Only an individual with a marijuana-related conviction falls within the class of people the Legislature sought to

protect." (*Id.* at p. 1449.) We disapproved of the use of litigation " 'to precipitate payoffs by private businesses for alleged violations of law having no real relationship to a true public interest.' " (*Id.* at p. 1451.)

Following our issuance of the writ, the case was assigned to a new judge. In August 2009, the court issued an order granting Starbucks's motion for summary judgment as to the three named plaintiffs, who "are therefore found not to be adequate representatives of the class," and giving plaintiffs 10 days in which to " 'amend the complaint, redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative.' (*CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 288 [71 Cal.Rptr.3d 441].)"

In September 2009, plaintiffs filed a first amended complaint, redefining the class to include only job applicants with marijuana convictions, and excluding from the class any applicant who allegedly sustained actual damages greater than $200 as a result of any privacy violations. The first amended complaint did not identify any class representatives who fit within the parameters of this newly defined class, and the trial court never issued an order certifying such a class of convicted marijuana offenders.

In February 2010, plaintiffs filed a motion to compel Starbucks to respond to special interrogatories to identify, by name, last known home address, and last known home telephone number, each person who filled out a job application after June 23, 2004, but more than two years after a conviction for a minor marijuana offense. According to plaintiffs' counsel, "[d]espite substantial efforts, Plaintiffs have been unable to establish a suitable representative for a redefined class of job applicants possessing the requisite marijuana conviction."

At the hearing, plaintiffs' counsel stressed the court's duty to "protect the class." Neither side addressed how exposing prior marijuana convictions possibly could "protect" the interests of unnamed class members.

On March 22, 2010, the court issued a minute order, directing Starbucks to review its 135,000 or so job applications in random batches of 25 applicants until it found 25 applicants who submitted a Starbucks job application more than two years after receiving a marijuana conviction. A third party administrator would send such applicants an opt-out letter, informing them "of this action," and giving them the opportunity, via a "negative opt out," to object to disclosure of their personal information. Unless an applicant objected, Starbucks would be required to disclose their identities to plaintiffs' counsel.

The court entered a judgment in favor of Starbucks and against the three named plaintiffs in conformity with its August 20, 2009 order granting

summary judgment. However, the court declined to sign Starbucks's proposed order of dismissal to dismiss the action in its entirety based on plaintiffs' failure to establish a suitable class representative.

Starbucks filed a petition for writ of mandate to overturn the discovery order and to dismiss the action. We issued an order to show cause and stayed the proceedings below.

II

THE PROPOSED DISCOVERY WILL IMPAIR THE PRIVACY INTERESTS OF
STARBUCKS'S JOB APPLICANTS THAT THE MARIJUANA REFORM
LEGISLATION SOUGHT TO PROTECT

We review for abuse of discretion the trial court's order permitting discovery of the identities of class members who may become substitute plaintiffs in place of the named plaintiffs who were not members of the class they purported to represent. (*First American Title Ins. Co. v. Superior Court* (2007) 146 Cal.App.4th 1564, 1573 [53 Cal.Rptr.3d 734] (*First American*).)

■ Precertification class discovery is not a matter of right. Class actions rest on considerations of equity and justice. Before allowing class counsel to find a viable class representative, trial courts must apply a balancing test and weigh the actual or potential abuse of the class action procedure against the potential benefits that might be gained. The *CashCall* court called this weighing process the "*Parris* balancing test" after the leading case on the subject. (*CashCall, Inc. v. Superior Court, supra,* 159 Cal.App.4th at p. 285 (*CashCall*), citing *Parris v. Superior Court* (2003) 109 Cal.App.4th 285, 300–301 [135 Cal.Rptr.2d 90] (*Parris*); see also *Safeco Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 834 [92 Cal.Rptr.3d 814] [no abuse of discretion]; *Cryoport Systems v. CNA Ins. Cos.* (2007) 149 Cal.App.4th 627, 634 [57 Cal.Rptr.3d 358] (*Cryoport*) [abuse of discretion]; *First American, supra,* 146 Cal.App.4th 1564, 1576–1577 [abuse of discretion]; *Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772, 779 [40 Cal.Rptr.3d 575] [no abuse of discretion].)[1]

In *First American, supra,* 146 Cal.App.4th 1564, the Court of Appeal issued a writ of mandate to reverse a precertification discovery order in a

---

[1] Plaintiffs emphasize the fact that a class already has been certified here. But the trial court's certification order defines a wholly different class—*all* Starbucks's job applicants. As we held in *Starbucks I,* this is not a valid category of "aggrieved" persons under Labor Code section 432.8. Indeed, since the original class was certified, plaintiffs have filed an amended pleading that identifies a different class—Starbucks's applicants with prior minor marijuana convictions. This class never has been certified, and the named plaintiffs never had standing to claim to be class representatives.

headless class action against title insurers that allegedly paid kickbacks to lenders for referral business. Contrary to his initial pleading, the named plaintiff was unable to prove the defendants ever made any payments in connection with his purchase of title insurance. He therefore was never a member of the class alleged in the complaint.

Applying the *Parris* balancing test, the appellate court concluded the trial court abused its discretion in granting discovery to find a new plaintiff. The court emphasized that the named plaintiff was an "acknowledged stranger" (italics omitted) to the kickback scheme, and refused to allow his attorneys to use him as a placeholder to obtain more appropriate clients. The unnamed class representatives were free to file their own future actions, if they desired. "In short, the potential for abuse of the class action procedure is overwhelming, while the interests of the real parties in interest are minimal. Precertification discovery under these circumstances would be an abuse of discretion." (*First American, supra,* 146 Cal.App.4th at p. 1577.)

Here, despite some five years of litigation, plaintiffs admittedly have made no showing that any of some 135,000 Starbucks applicants have been "aggrieved" as a result of the job application form. Despite our published appellate opinion, not a single person has stepped forward who fits within the statutory criteria. This is so even though we stressed in *Starbucks I* that such litigants could avoid any potential opprobrium by using a form of Doe pleading, or other protective device to shield their identities from public disclosure. (See *Starbucks I, supra,* 168 Cal.App.4th at p. 1452.)

Instead, plaintiffs want Starbucks to do this work for them, to actually search through its job applications precisely for the purpose of identifying applicants with marijuana convictions. Their names would be forwarded to a neutral administrator who would draft an "opt-out" letter to their last known address, explaining the litigation, and requiring them to affirmatively assert their privacy rights to prevent their names from being forwarded to plaintiffs' counsel.

In *Starbucks I*, plaintiffs' counsel underscored the need to protect the privacy rights of marijuana offenders and to avoid any situation where they would be compelled to " 'relinquish their privacy to enforce the statute. In other words, the protections of sections 432.7 and 432.8 would be rendered illusory because the group to which Petitioner would limit those protections would have to abandon those protections to assert their rights.' " (*Starbucks I, supra,* 168 Cal.App.4th at p. 1452.)

We are at a loss to understand how plaintiffs can square these concerns, which we share, with their proposed discovery. One can only imagine the

potential consternation in a household where a Starbucks applicant with a marijuana-tinged past is "outed" to a spouse, child, or roommate who opens the letter and reads about a lawsuit involving job applicants with prior marijuana convictions.

■ In the landmark marijuana reform legislation of 1975 and 1976, the Legislature substantially modified California law to prevent persons convicted of certain marijuana-related offenses from being further penalized in the public or private sector on account of their marijuana convictions. (Stats. 1975, ch. 248, § 1, pp. 641–649; Stats. 1976, ch. 952, § 1, pp. 2177–2180; see discussion in *Hooper v. Deukmejian* (1981) 122 Cal.App.3d 987, 997–999 [176 Cal.Rptr. 569] (*Hooper*).)

The Legislature intended to destigmatize marijuana convictions, thereby ensuring that "once the offender has paid his prescribed debt to society, he not be further penalized by curtailment of his opportunities for rehabilitation, education, employment, licensing, and business or professional advancement." (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) "This comprehensive reform legislation represented a conscious and substantial modification of California's past public policy which frequently equated marijuana offenses with much more serious drug offenses." (*Governing Board v. Mann* (1977) 18 Cal.3d 819, 826 [135 Cal.Rptr. 526, 558 P.2d 1].)

Rather than just requiring the sealing of records of minor marijuana convictions, the marijuana reform legislation called for their "timely destruction" (Health & Saf. Code, § 11361.5, subd. (a)) and their "permanent obliteration" (*id.*, subd. (c)).[2] Health and Safety Code section 11361.7 further provides that any record "subject to destruction or permanent obliteration" under the legislation "shall not be considered to be accurate, relevant, timely, or complete for any purposes by any agency or person." (*Id.*, subd. (a).)

■ Most notably, the marijuana reform legislation proscribed employers, whether public or private, from "seek[ing] from any source whatsoever" any records pertaining to minor marijuana convictions sustained by job applicants or employees. (Lab. Code, § 432.7, subd. (a).)

---

[2] Health & Safety Code section 11361.5, subdivision (a) provides, in pertinent part: "Records of any court of this state . . . or of any state agency pertaining to the arrest or conviction of any person for a violation of [various minor marijuana offenses] shall not be kept beyond two years from the date of the conviction, or from the date of the arrest if there was no conviction . . . . Any court or agency having custody of the records shall provide for the *timely destruction* of the records in accordance with subdivision (c)." (Italics added.) Section 11361.5, subdivision (c) provides, in pertinent part: "Destruction of record of arrest or conviction . . . shall be accomplished by *permanent obliteration* of all entries or notations upon the records pertaining to the arrest or conviction, and the record shall be prepared again so that it appears that the arrest or conviction never occurred." (Italics added.)

Nobody can misunderstand this clear legislative purpose. Records of minor marijuana convictions are to be accorded the highest degree of privacy; they must be treated as if they never existed. Despite these strongly worded prohibitions, the subject discovery order requires Starbucks to rummage through old job applications to locate offenders whose existence otherwise would be hidden from public exposure.

Considering the manifest harm and the minimal benefit (all of which are wrapped up in the same legislation), the discovery order cannot possibly pass the *Parris* balancing test. As *Hooper* holds, publicly disclosing marijuana-related offenses covered by the marijuana reform legislation violates the individual offender's right of privacy. (*Hooper, supra*, 122 Cal.App.3d at p. 1015.)

In analogous situations, California courts, applying a qualified constitutional privilege for privacy, have intervened to prevent the compelled disclosure of information through discovery orders that unduly impinged upon the privacy rights of innocent third parties. (See, e.g., *Britt v. Superior Court* (1978) 20 Cal.3d 844, 855 [143 Cal.Rptr. 695, 574 P.2d 766] [granting writ to protect associational privacy interests of homeowners who protested against airport noise from overly broad discovery order]; *Rancho Publications v. Superior Court* (1999) 68 Cal.App.4th 1538 [81 Cal.Rptr.2d 274] [granting writ to protect identities of anonymous authors of paid newspaper advertorials]; *Denari v. Superior Court* (1989) 215 Cal.App.3d 1488 [264 Cal.Rptr. 261] [granting writ to block blanket discovery order of names and addresses of all arrestees who were incarcerated at same time as plaintiff in excessive force case].)

Far from protecting the public's interest, precertification class discovery will harm the putative class members' protected privacy rights, in contravention of the prohibition against employer inquiries in the marijuana reform legislation. We thus follow *First American, supra*, 146 Cal.App.4th 1564, and *Cryoport, supra*, 149 Cal.App.4th 627, 634, and hold the trial court abused its discretion in allowing the proposed precertification discovery.

### III

IN CONTRAST TO *CASHCALL*, LEGAL REMEDIES REMAIN AVAILABLE
TO TRULY AGGRIEVED STARBUCKS APPLICANTS, IF ANY, WHOSE
PRIVACY RIGHTS HAVE BEEN VIOLATED

Plaintiffs rely upon *CashCall, supra*, 159 Cal.App.4th 273 to support a discovery order in a headless class action case, but *CashCall* is distinguishable. In *CashCall*, the plaintiffs brought a class action lawsuit against a

collection agency which admittedly engaged in illegal, secret monitoring of telephone calls involving CashCall debtors. Through discovery, the originally named plaintiffs determined that the collection agency had not secretly monitored their calls. They successfully convinced the trial court to allow them to engage in additional discovery to provide to a neutral clearinghouse the names and last known addresses of those debtors whose calls had been secretly monitored.

In affirming the discovery under the *Parris* balancing test, the *CashCall* court spoke of a "Catch 22" absurdity: The only conceivable class members were debtors who were unaware of the secret monitoring. How then would they know to join in the litigation? (*CashCall, supra*, 159 Cal.App.4th at p. 280.) Under the unique circumstances of the case, the appellate court concluded that the headless class plaintiffs could engage in discovery to ascertain replacement class representatives. "Without that precertification discovery, the class of 551 members whose calls were secretly monitored would be unable to obtain any relief for the alleged violations of their privacy rights." (*Id.* at p. 291.)

Here, in contrast, Starbucks's job applicants who had marijuana convictions know about their own previous convictions and about the fact that they had applied for a job at Starbucks. They are free to effectuate the legislative purposes underlying Labor Code section 432.8 by bringing individual actions, filing, if necessary, through Doe pleadings, and recovering not only actual damages or a statutory penalty, whichever is greater, but also attorney fees. (See Lab. Code, § 432.7, subd. (c).) These provide a substantial incentive for individual plaintiffs to bring an action for a violation of the statute; a class action, with potentially excessive penalties, is not necessary. Moreover, "[t]he specter of potential criminal exposure sufficiently deters miscreant employers from improperly intruding into job applicants' protected zones of privacy." (*Starbucks I, supra*, 168 Cal.App.4th at p. 1452.)[3]

The trial court has never certified the class of persons (Starbucks's applicants with prior marijuana convictions) as alleged in the first amended complaint. Since the class has not received notice of this action, no potential Starbucks applicant with a prior marijuana conviction will lose his or her right to bring an action for a $200 statutory penalty. (See *Cryoport, supra*, 149 Cal.App.4th at p. 634 ["And as in *First American*, the potential class members' interests in this particular lawsuit are minimal. 'Any further legal action can be pursued by members of the class, if they so desire. [Plaintiff]

---

[3] The newly defined class does not include Starbucks's applicants who have sustained actual damages, such as lost wages, or damage to their reputations, which exceed $200. Thus, "truly" aggrieved applicants are not prejudiced in any way by the dismissal of a class action which does not even purport to cover them.

makes no argument that any future action they might pursue would be time-barred, or offer any other reason why the class members might be denied relief if *this action* is unable to proceed on their behalf.' "].)

Plaintiffs' attorneys say the class remedy is necessary because the $200 statutory penalty is de minimis. They frankly desire to achieve a *"more powerful litigation posture"* because " '[i]n numbers there is strength.' "

■ We recognize class counsel's tactical motivations to increase their side's bargaining leverage, but the argument militates *against* a class action, rather than in its favor. The excessive penalties sought by class counsel bear little relationship to any true public interest for what, at most, appears to be a technical violation of Labor Code section 432.8 by Starbucks. The strength that may be gained in numbers also may produce the "absurd result of turning the statute into the veritable 'adding machine' that has been decried by our Supreme Court." (*Starbucks I, supra,* 168 Cal.App.4th at p. 1451.) The proper exercise of the *Parris* balancing test requires precertification discovery to be denied "in those cases in which that potential abuse of the class action procedure outweighs the rights of the class members." (*CashCall, supra,* 159 Cal.App.4th at p. 295.)

Starbucks asks us to disavow *CashCall* in its entirety and to disapprove the *Parris* balancing test for plaintiffs who never had standing. According to Starbucks, "[a]llowing discovery by plaintiffs without standing to find a plaintiff with standing undermines public policy by encouraging attorney-driven lawsuits and sham lawsuits filed in the names of plaintiffs who are placeholders until discovery can turn up a viable plaintiff. Instead, this Court should follow federal cases which have rejected discovery by plaintiffs who never had standing."

We see no need to revisit *CashCall*, or to adopt a blanket rule against headless class discovery, as Starbucks seeks here. In the context of this case, the *Parris* balancing test works to prevent the types of abuses Starbucks decries. We do not roam through the case books " 'as knights *errant amici* searching for deficiencies' " that do not affect the outcome of the matter before us. (*Starbucks I, supra,* 168 Cal.App.4th at p. 1447.)

At oral argument, Starbucks asserted its intent to seek dismissal of the action upon remand because of plaintiffs' continuing inability to locate a suitable class representative. "Absent a named plaintiff with standing, the class action is subject to demurrer and dismissal." (*CashCall, supra,* 159 Cal.App.4th at p. 285.) With no readily apparent means by which class members may be identified without also violating their statutory privacy

rights, there may well be no ascertainable class, let alone a class representative plaintiff. But these matters are not currently before us on this challenge to the discovery order.

## IV

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent the Superior Court of Orange County to vacate its discovery order of March 22, 2010. The temporary stay is lifted. Starbucks is entitled to its costs.

Rylaarsdam, Acting P. J., and Moore, J., concurred.