Filed 5/23/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FORREST HUFF, | H042852 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 1-10-CV-172614) |
| v. | |
| SECURITAS SECURITY SERVICES USA, INC., | |
| Defendant and Appellant. | |

This case presents the question of whether a plaintiff who brings a representative action under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698, et seq.) may seek penalties not only for the Labor Code violation that affected him or her, but also for different violations that affected other employees. The trial court granted plaintiff Forrest Huff a new trial, reasoning that Huff's failure to prove he was personally affected by one of the multiple Labor Code violations alleged in his complaint did not preclude his action under PAGA. As we will explain, we conclude that PAGA allows an "aggrieved employee" —a person affected by at least one Labor Code violation committed by an employer—to pursue penalties for all the Labor Code violations committed by that employer. We will therefore affirm the order granting a new trial.

## I.  BACKGROUND

Huff worked as a security guard for defendant Securitas Security Services USA, Inc. (Securitas). Securitas provides businesses with on-site security. It hires employees to work as security guards, and then contracts with its clients to provide guards for a particular location. Securitas occasionally places guards in temporary assignments, but it

more typically provides clients with long term placements. (A standard contract duration, though terminable on 30 days' notice, is three years.)

Huff was employed by Securitas for about a year, during which time he worked at three different client sites. After he was removed from an assignment at the request of the client, Huff resigned his employment. Two months later, he sued Securitas for Labor Code violations. The operative second amended complaint contains a representative cause of action under PAGA, seeking penalties for Labor Code violations committed against Huff and other employees. According to the complaint, the basis for the PAGA claim is that Securitas is subject to penalties for violations of "numerous Labor Code provisions." The Labor Code provisions alleged to have been violated include sections 201 [requiring immediate payment of wages upon termination of employment]; 201.3, subdivision (b) [requiring temporary services employers to pay wages weekly]; 202 [requiring payment of wages within 72 hours of resignation]; and 204 [failure to pay all wages due for work performed in a pay period] (unspecified statutory references are to the Labor Code).

Because of the representative nature of the action, the case was designated complex and the court ordered that the trial would proceed in phases. The parties agreed the first phase of the trial would involve a sample of 20 Securitas employees (10 selected by Huff and 10 by Securitas), and would determine only certain disputed issues as to those employees. Among the issues the parties agreed to have determined in the first phase were whether the sample employees had been paid on a weekly basis as required by Labor Code section 201.3, subdivision (b)(1); whether they were assigned to work for a client for over 90 days (and were therefore exempt from the weekly pay requirement under the exemption provided for by section 201.3, subdivision (b)(6)); and the amount of any penalties to be imposed against Securitas.

The first phase was tried to the court. After Huff presented his case, Securitas moved for judgment under Code of Civil Procedure section 631.8. The trial court granted

2

the motion, finding that the evidence established Huff was not a temporary services employee as defined by section 201.3, subdivision (b)(1), and as a result could not show he was affected by a violation of that section. The court further decided that Huff had no standing to pursue penalties under PAGA on behalf of others who were affected by that violation. Judgment was entered in favor of Securitas.

Huff moved for a new trial under Code of Civil Procedure section 657, and the trial court granted that motion. The court found that it made an error in law when it entered judgment in favor of Securitas based on Huff's inability to prove a violation of the section 201.3, subdivision (b)(1) weekly pay requirement. Under PAGA an "aggrieved employee" can pursue penalties for Labor Code violations on behalf of other current and former employees, and the statute defines an aggrieved employee as someone who suffered "one or more of the alleged violations" of the Labor Code for which penalties are sought. Relying on that statutory definition, the court concluded that so long as Huff could prove he was affected by at least one Labor Code violation, he could pursue penalties on behalf of other employees for additional violations. Since Huff's complaint alleged that another violation of the Labor Code (separate from the weekly pay requirement) affected him personally, the court decided that the failure to establish a violation of the weekly pay requirement did not preclude his entire PAGA cause of action. Securitas appeals from the order granting Huff a new trial.

## II.    DISCUSSION

### A. THE PRIVATE ATTORNEYS GENERAL MODEL OF LABOR LAW ENFORCEMENT

California law closely regulates the working conditions of employees and the payment of their wages. (See, e.g., §§ 201 [requiring immediate payment of all wages due upon discharge of an employee]; 202 [requiring payment of wages within 72 hours of an employee's resignation]; 201.3 [requiring weekly payment of wages for temporary employees]; 204 [requiring semi-monthly payment of wages during regular employment].) Those labor laws are enforceable in several ways: An employee can file

3

suit to recover wages owed and any statutory damages provided for by the Labor Code (see, e.g., § 203). An employee can file an administrative complaint with the Labor Commissioner, who is authorized to investigate complaints and order employers to pay wages owed (§ 98). Violations of certain provisions are punishable by a monetary penalty, which the Labor Commissioner can recover in an administrative proceeding or in court (§§ 210, 225.5); and some violations may be prosecuted as criminal offenses (§§ 215, 216, 218).

Despite those statutes and remedies, the Legislature found state labor laws were not being effectively enforced. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 379 (*Iskanian*).) Declining funding and staffing levels had left state agencies unable to produce widespread compliance. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980–981.) The solution the Legislature devised is the statute at issue in this case. PAGA was enacted in 2003 to allow private parties to sue for the civil penalties previously only recoverable by a state agency. (*Iskanian*, *supra*, 59 Cal.4th at p. 379.) As the California Supreme Court recognized in *Iskanian*, PAGA created a type of *qui tam* action, authorizing a private party to bring an action to recover a penalty on behalf of the government and receive part of the recovery as compensation. (*Id.* at p. 382). When an employee brings a representative action under PAGA, he or she does so "as the proxy or agent of the state's labor law enforcement agencies, not other employees." (*Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1241.)

"The purpose of the PAGA is not to recover damages or restitution, but to create a means of 'deputizing' citizens as private attorneys general to enforce the Labor Code. [Citation.]" (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 501.) The relief provided by the statute is designed to benefit the general public, not the party bringing the action. (*Ibid*.) Since PAGA is fundamentally a law enforcement action, a plaintiff must first allow the appropriate state authorities to investigate the alleged Labor Code violations, by providing the Labor and Workforce Development Agency with written

4

notice of the violations.  (*Montano v. Wet Seal Retail, Inc.* (2015) 7 Cal.App.5th 1248, 1256, citing § 2699, subd. (a).)  Only if the agency elects not to pursue the violations may an employee file a PAGA action.  (§ 2699.3, subd. (a)(2).)  The penalties that can be recovered in the action are those that can be recovered by state enforcement agencies under the Labor Code; they are separate from the statutory damages that can be recovered by an employee pursuing an individual claim for a Labor Code violation.  (*Iskanian*, *supra*, 59 Cal.4th 348, 381.)  Penalties recovered by a plaintiff in a PAGA case are paid mostly to the state.  (See § 2699, subd. (i) [75 percent distributed to the Labor and Workforce Development Agency, and the remaining 25 percent to aggrieved employees].)

### B. AN EMPLOYEE AFFECTED BY AT LEAST ONE LABOR CODE VIOLATION MAY PURSUE PENALTIES ON BEHALF OF THE STATE FOR UNRELATED VIOLATIONS BY THE SAME EMPLOYER

Securitas contends the trial court erred in concluding that so long as Huff was affected by at least one Labor Code violation, he can sue under PAGA to recover penalties for any alleged violation by Securitas, even those that did not affect him.  Securitas does not dispute that PAGA authorizes a plaintiff to recover penalties for Labor Code violations suffered by other employees.  But it argues the statute allows for that only when the violations against the other employees involve the same provision of the Labor Code as the violation suffered by the plaintiff.  Resolving the issue raised by Securitas requires us to interpret PAGA, a pure question of law to which we apply a de novo standard of review.  (*Haniff v. Superior Court* (2017) 9 Cal.App.5th 191, 198.  )

When we interpret a statute our primary task is to ascertain the Legislature's intent and effectuate the purpose of the law.  We look first to the words of the statute itself as the most direct indicator of what the Legislature intended.  (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.)  PAGA provides in section 2699, subdivision (a) that "any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and

5

Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." The statute then specifically defines "aggrieved employee" in section 2699, subdivision (c): " 'aggrieved employee' means any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."

As the trial court did, we interpret those provisions to mean that any Labor Code penalties recoverable by state authorities may be recovered in a PAGA action by a person who was employed by the alleged violator and affected by at least one of the violations alleged in the complaint. Indeed, we cannot readily derive any meaning other than that from the plain statutory language, and Securitas does not offer a reasonable alternative for what those provisions mean when read together.

Instead, Securitas relies heavily on legislative history, which it views as revealing the Legislature's intent to allow a PAGA plaintiff to pursue penalties only for the same type of Labor Code violation alleged as to him or her.[1] Securitas points to a statement attributed to the sponsors of the PAGA bill that "unlike the UCL [Unfair Competition Law; Bus. & Prof. Code § 17200, et seq.] this bill would not open private actions up to persons who suffered no harm from the alleged wrongful act … private suits for Labor Code violations could be brought only by an 'aggrieved employee'—an employee of the alleged violator against whom the alleged violation was committed." (Assem. Com. on

---

[1] Both parties have asked us to take judicial notice of documents reflecting the legislative history for S.B. 796, the bill that enacted PAGA in 2003; and S.B. 940, a bill that amended PAGA in 2008. We grant those requests. Huff also requested that we judicially notice documents reflecting the legislative history for A.B. 281, a bill proposed in 2017 that would amend PAGA. That request relates to documents not relevant to the determination of the issues in this appeal, and is therefore denied.

6

Labor and Employment, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) July 9, 2003, p. 7.)  Securitas cites other statements from the legislative history indicating employees would be permitted to act in the capacity of a private attorney general to recover penalties for a Labor Code violation "solely because they have been aggrieved by that violation."  (Sen Comm. on Labor and Industrial Relations, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) April 9, 2003, p. 3.; see also, Sen. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003-2004 Reg. Sess.) June 26, 2003, p. 6 ["… this bill would not permit private actions by persons who suffered no harm from the alleged wrongful act."].)

It is an established principle that where statutory language is unambiguous, a court is precluded from considering legislative history.  (See, e.g., *People v. Robles* (2000) 23 Cal.4th 1106, 1112 ["If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs.  [] If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative intent."].)  But as Securitas points out, the plain meaning rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose.  (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  Courts have therefore considered legislative history even in cases where the text of a statute is clear; but only to confirm the interpretation already apparent from the plain language, not to advance an alternative meaning.  (See, e.g., *Miller v. Bank of America, NT & SA* (2009) 46 Cal.4th 630, 642 [examination of legislative history to support conclusion regarding proper interpretation]; *Haniff v. Superior Court*, *supra*, 9 Cal.App.5th at p. 202 [legislative history may provide additional authority confirming the court's interpretation of a statute].)

Even assuming it is appropriate to consider legislative history here, that would not change our conclusion because none of the purported expressions of intent relied on by Securitas made its way into the statute.  The proposition that PAGA allows an employee

7

to pursue penalties only for the type of violation he or she has suffered is directly at odds with the provision that an action may be brought by an employee against whom "one or more" of the alleged violations was committed. Legislative history, even when appropriately considered, cannot be used to contradict language that the Legislature decided to include in the statute. (*An Independent Home Support Service, Inc. v. Superior Court* (2006) 145 Cal.App.4th 1418, 1437.) Had the Legislature intended to limit the recovery of a PAGA plaintiff suing in a representative capacity to only the penalties for employees affected by the same Labor Code violation as the plaintiff, it would have said so in the statute. Indeed, the Legislature did make such a distinction in section 2699, subdivision (h), which prohibits an employee from bringing a PAGA claim when state authorities have already taken action against an employer for the same violation: "No action may be brought under this section by an aggrieved employee if the agency or any of its departments, divisions, commissions, boards, agencies, or employees, on the same facts and theories, cites a person within the timeframes set forth in Section 2699.3 for a violation of the same section or sections of the Labor Code under which the aggrieved employee is attempting to recover a civil penalty on behalf of himself or herself … ." We find it significant that the Legislature did not use similar limiting language regarding what violations can be pursued by an aggrieved employee when, as in this case, state authorities do not take enforcement action.

Securitas makes much of the fact that a previous version of the bill stated aggrieved employees could recover penalties "on behalf of themselves *or* other current and former employees," and the language was changed to the conjunctive in the enacted version—allowing aggrieved employees to bring an action "on behalf of himself or herself *and* other current or former employees." (§ 2699, subd. (a) (italics added).) But the effect of that change is simply to require that a PAGA claim be representative. That is, an employee seeking to recover Labor Code penalties that would otherwise be recoverable only by state authorities cannot do so in a purely individual capacity; the

8

employee must bring the action on behalf of himself or herself *and* others. (*Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1123–1124 [" '[T]he PAGA statute does not enable a single aggrieved employee to litigate his or her claims, but requires an aggrieved employee "on behalf of herself or himself and other current or former employees" to enforce violations of the Labor Code by their employers.' [Citation.]") The use of conjunctive phrasing to preclude an employee from using PAGA to litigate as an individual has no bearing on whether a PAGA plaintiff may pursue penalties for all the Labor Code violations committed by an employer.

We also observe that PAGA's legislative history as a whole actually undermines Securitas' position. The Legislature clearly stated that its intention in enacting PAGA was to solve the problem of inadequate state enforcement resources by deputizing private citizens to pursue violators. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980–981.) Given the goal of achieving maximum compliance with state labor laws, it would make little sense to prevent a PAGA plaintiff (who is simply a proxy for state enforcement authorities) from seeking penalties for all the violations an employer committed.

Securitas' argument that in order to have standing to pursue statutory violations, a plaintiff must be aggrieved by those particular violations would have more traction if a PAGA claim were not a *qui tam* proceeding. As observed by the California Supreme Court in *Iskanian* (citing the Federal False Claims Act as an example), traditional standing requirements do not necessarily apply to *qui tam* actions since the plaintiff is acting on behalf of the government: "The qui tam plaintiff under the federal False Claims Act has standing in federal court under article III of the United States Constitution, even though the plaintiff has suffered no injury in fact, because that statute 'can reasonably be regarded as effecting a partial assignment of the Government's damages claim. [Citation.]' " (*Iskanian*, *supra*, 59 Cal.4th at p. 382.) So in this context, not being injured by a particular statutory violation presents no bar to a plaintiff pursuing penalties for that violation. Although a PAGA suit differs from a pure *qui tam* action

9

(such as under the Federal False Claims Act) in that PAGA's standing requirement prevents the general public from bringing an action, the even more stringent standing requirement urged by Securitas is not found in the statute. For PAGA standing a plaintiff need only have been employed by the violator and affected by "one or more" of the alleged violations. (§ 2699, subds. (a), (c).) That requirement strikes a reasonable balance, requiring a plaintiff to have some connection to the employer's unlawful practices, while also advancing the state's interest in vigorous enforcement.

Securitas' interpretation of PAGA standing—that a plaintiff must have personally experienced the same violations pursued in the action—is similar to the requirements for class certification. (See *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 [requirements for maintaining a class action include predominant questions of law and fact among the class, and a plaintiff with claims that are typical of the class].) But a representative action under PAGA is not a class action. (*Franco v. Arakelian Enterprises, Inc.* (2015) 234 Cal.App.4th 947, 962.) It is a law enforcement action where the plaintiff acts on behalf of the state, not on behalf of other employees. (*Ibid.*) The idea that a plaintiff must be aggrieved of all the violations alleged in a PAGA case does not flow logically from the fact that a plaintiff is standing in for government authorities to collect penalties paid (in large part) to the state. The plaintiff is not even the real party in interest in the action—the government is. (*Iskanian*, *supra*, 59 Cal.4th at p. 382.) In that sense, it would be arbitrary to limit the plaintiff's pursuit of penalties to only those Labor Code violations that affected him or her personally.

In *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 999 (*Amalgamated Transit*), the California Supreme Court held that a union had no standing to bring a PAGA claim because it had never been employed by the alleged violator and therefore was not an "aggrieved employee." (*Id.* at p. 1003.) That case interpreted a part of the "aggrieved employee" definition not at issue here—no one disputes Huff was employed by Securitas—but the Supreme Court's description of

10

PAGA is consistent with our construction: "The Labor Code Private Attorneys General Act of 2004 permits an 'aggrieved employee'—that is, an employee against whom a violation of a provision of the Labor Code was committed [citation]—to bring an action 'on behalf of himself or herself and other current or former employees' to recover civil penalties for violations of other provisions of the Labor Code. [Citation.]" (*Amalgamated Transit*, *supra*, at p. 1003.) The construction urged by Securitas is contrary to the view expressed by the Supreme Court that the statute allows an employee against whom a Labor Code violation was committed to recover penalties "for violations of other provisions of the Labor Code." (*Ibid.*)

We also note, as did the trial court, that PAGA has been interpreted in two federal district court cases as allowing an employee who has suffered a Labor Code violation to pursue penalties for all the violations committed by the employer. (*Jeske v. Maxim Healthcare Servs., Inc.* (E.D. Cal. 2012) 2012 U.S. Dist. LEXIS 2963, at p. 37 [Plaintiff "need not have suffered all PAGA violations for which she seeks to pursue civil penalties."]; *Holak v. K Mart Corp.* (E.D. Cal. 2015) 2015 U.S. Dist. LEXIS 65439, at pp. 12–13 ["By the plain language of the statute, an aggrieved employee need only suffer one of the Labor Code violations alleged against his or her employer to be able to bring a PAGA claim on behalf of himself or herself and current or former employees who suffered any Labor Code violation at the hands of the employer. Plaintiff need not have actually suffered all of the Labor Code violations that she alleges to have taken place for purposes of seeking PAGA penalties."].) Of course, those decisions are not binding on this court, and Securitas correctly points out that the standing issue was not necessary to the resolution of either case, so the observations regarding standing requirements are

11

dicta.  Nonetheless, we find it persuasive that two federal courts have construed the statute the same way we do here.[2]

Securitas argues that the "operative provision" of PAGA is section 2699, subdivision (a).  Securitas attempts to avoid the implications of section 2699, subdivision (c), which defines "aggrieved employee," by characterizing it as merely a definition that "was never intended to overwhelm all other provisions of the PAGA."  But in construing a statute, we will not focus on one provision while ignoring another, as Securitas would have us do.  "Fundamental rules of statutory interpretation require that a statute be read as a whole, and that the parts of a statute be read together and harmonized, when possible, in order to give effect to the intent of the Legislature."  (*County of Orange v. Flournoy* (1974) 42 Cal.App.3d 908, 914.)  We must accord significance to every word, phrase, and sentence in discerning the legislative purpose.  (*People v. Valencia* (2017) 3 Cal.5th 347, 357.)  Our interpretation of the statute harmonizes section 2699, subdivision (a) with the definition of "aggrieved employees" in section 2699, subdivision (c) and is therefore preferable to Securitas' proposed interpretation, which focuses on the former in isolation.  Securitas further asserts that the definition of "aggrieved employee" in section 2699, subdivision (c) cannot be harmonized with other provisions of the statute, specifically, subdivisions (f) and (i) of that section.

Section 2699, subdivision (f) creates a civil penalty for any Labor Code violation for which a penalty is not provided elsewhere in the law.  The penalties under section 2699, subdivision (f) are "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."  Securitas posits that using the

---

[2] Securitas has asked us to take judicial notice of a decision regarding PAGA from the Alameda County Superior Court, and urges us to adopt the reasoning in that decision  The rules of court do not permit citation to Superior Court decisions as authority (Cal. Rules of Court, rule 8.1115(a)), and the decision is not otherwise relevant here. We therefore deny the request for judicial notice.

definition of aggrieved employees in section 2699, subdivision (c) to calculate those penalties would allow over-counting in some cases to include weeks worked by employees affected by just one of the Labor Code violations alleged in the complaint, even if it is not the one giving rise to the penalties imposed by section 2699, subdivision (f). To the contrary, it is entirely possible to harmonize the two provisions. The method of calculation under section 2699, subdivision (f) imposes penalties based on the total number of employees that have been affected by an employer's Labor Code violations. Though Securitas calls that "over-counting," it is not impermissible for the Legislature to impose penalties measured in that way. Even if the method of calculation provided for by section 2699, subdivision (f) is something of a blunt instrument, it is not our role to rewrite the statute. (*People v. Garcia* (1999) 21 Cal.4th 1, 14.) Separation of powers principles require us to interpret the law as written, "and leave for the People and the Legislature the task of revising it as they deem wise." (*Id.* at p. 15.) We also note that PAGA gives a court broad discretion to "award a lesser amount than the maximum civil penalty amount … if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." (§ 2699, subd. (e)(2).) So the statute incorporates a remedy if the penalty calculation is unfair or arbitrary as applied to a particular employer.

Section 2699, subdivision (i) provides for the distribution of the monetary penalties recovered in a PAGA action: 75 percent to the state Labor and Workforce Development Agency, and 25 percent to the aggrieved employees. Securitas maintains that applying the statutory definition of "aggrieved employee" to that provision cannot be correct because that would allow a plaintiff to share in penalties imposed for violations he or she never suffered. But Securitas again ignores the distinction between an individual lawsuit and the *qui tam* action authorized by PAGA. As previously discussed, a PAGA plaintiff does not pursue an individual claim but rather is deputized to bring a suit to collect penalties on behalf of the government. If all penalties were paid to the state, an

13

individual would have little incentive to pursue a PAGA action. Since the Legislature sought to give individual employees an incentive to enforce labor laws in place of understaffed state agencies, it provided for some of the penalties to be paid to the plaintiff employees.[3] Applying the statutory definition of "aggrieved employee" to the part of the statute governing distribution of the penalties yields a result consistent with the overall purpose of the legislation.

Securitas asserts that allowing PAGA plaintiffs to recover penalties for violations that did not affect them would grant them powers beyond those of the Labor Commissioner. But it cites no authority for the proposition that the Labor Commissioner is precluded from seeking penalties for all Labor Code violations an employer has committed. An action brought by the Labor Commissioner to recover penalties "shall be brought in the name of the people of the State of California and the Labor Commissioner." (§ 210, subd. (b).) The state's interest in such an action is to enforce its laws, not to recover damages on behalf of a particular individual. The Labor Commissioner therefore has the authority to seek penalties for all known violations committed by an employer—just as a PAGA plaintiff has that authority when standing in the shoes of the Labor Commissioner.

Securitas relies on *Starbucks Corp. v. Superior Court* (2008) 168 Cal.App.4th 1436, 1451 (*Starbucks*), which found that the plaintiffs could not bring an action for violation of a law prohibiting employers from inquiring about marijuana-related convictions on job applications because they had not suffered any injury from the inquiry—they had no such convictions to disclose. The court held that a plaintiff could not sue for a statutory penalty unless he or she was within the class of persons the statute was designed to protect. *Starbucks* is distinguishable for two reasons. First, it involved *individual* claims brought on behalf of other individuals, not a *qui tam* claim brought on

---

[3] The statute does not further explain the method to be used for dividing the 25 percent of the total penalties among the aggrieved employees. (See § 2699, subd. (i).)

14

behalf of the government.  The traditional standing analysis undertaken by the court in *Starbucks* does not apply in a *qui tam* action.  And second, PAGA states that an action may be brought by an employee "against whom one or more of the alleged violations was committed," a clear expression that the Legislature intended that a PAGA plaintiff be affected by at least one, but not necessarily all, of the violations alleged in the action.  The *Starbucks* court, by contrast, found no such expression of legislative intent in the statute at issue in that case, and relied on that silence to conclude that only those injured by a particular violation of the statute could bring suit.  (*Id.* at p. 1451.)

Securitas asserts that applying the statutory definition of "aggrieved employee" as we do here leads to absurd consequences.  It worries that the penalties collectable by PAGA plaintiffs will be "bounded solely by [their] pleading imagination."  But a PAGA plaintiff does not collect penalties merely by alleging a Labor Code violation in the complaint.  The plaintiff still must prove at trial that a violation in fact occurred.  Procedural mechanisms such as summary adjudication remain available to weed out meritless claims before trial.  (Code of Civ. Proc. §437c, subd. (f)(1).)  Perhaps Securitas' concern is more about plaintiffs who bring PAGA claims solely as a fishing expedition to attempt to uncover other violations committed by the employer.  Though that concern is better directed to the Legislature, we note that the trial courts are also equipped to manage cases in a way that avoids unreasonable consumption of time or resources.  Where appropriate, cases brought under PAGA can be designated complex under the Rules of Court (as in this case), with rules designed to manage the expenditure of resources.  (See, e.g., Cal. Rules of Court, rule 3.750(c) [providing for an initial case management conference in cases designated complex, the principal objects of which are "to expose at an early date the essential issues in the litigation and to avoid unnecessary and burdensome discovery procedures in the course of preparing for trial of those issues."].)

15

The other consequences Securitas characterizes as absurd are that plaintiffs will be incentivized to pursue penalties for Labor Code violations that affected other employees, and will be able to collect a portion of the penalties imposed for those violations. Far from absurd, those consequences are precisely what the Legislature intended when it enacted PAGA as a way to encourage private parties to pursue Labor Code violations, relieving pressure on overburdened state agencies and achieving maximum compliance with labor laws. The trial court correctly found that so long as Huff was affected by at least one of the Labor Code violations alleged in the complaint, he can recover penalties for all the violations he proves.

### C. THE REMAINING LABOR CODE VIOLATIONS ALLEGED BY HUFF ARE SUFFICIENT TO SUPPORT THE PAGA CAUSE OF ACTION

When the court granted the defense motion for judgment after Huff presented his case at the first phase of trial, it found that Huff had failed to prove a violation of the section 201.3 weekly pay requirement because his assignments exceeded 90 days and he was therefore not a temporary employee. In its later order granting a new trial (from which Securitas now appeals), the court determined that regardless of whether Huff proved a violation of the weekly pay requirement, he could maintain a PAGA action because he alleged another Labor Code violation that did affect him: the failure to timely pay employees after they quit or were removed from a site, in violation of sections 201 and 202.

Securitas contends that even if PAGA permits a plaintiff to seek penalties for Labor Code violations that did not affect him or her, Huff still cannot proceed because the untimely payment of wages on termination is a new theory raised after trial. We agree that had Huff not alleged that claim as part of the lawsuit, he could not be granted a new trial to litigate it. But as noted by the trial court in its order granting a new trial, the second amended complaint states: "When a security officer quits or is removed from a site, Securitas typically does not immediately pay the officer. Instead, it waits until the

16

officer's next scheduled payday. This could be as much as 20 days, generally no less than 7 days, and averages at least 13 days. [¶] Securitas' actions violate the rights of Securitas' security officer employees to have their final wages paid on a timely basis as mandated by law. This is a violation of California Labor Code §§ 201, 202 … .'" The claim that Securitas failed to promptly pay wages on termination was not raised for the first time after trial, but was specifically alleged in the operative complaint.

Securitas also contends that Huff's claim for failure to pay wages on termination cannot support his PAGA cause of action because the claim is without legal merit. It argues that Huff's removal from an assignment does not constitute a termination of his employment as a matter of law and therefore it was not required to issue him a final paycheck at the time of removal. But the trial court never ruled on the merits of the claim for prompt payment of final wages, and as a reviewing court, we cannot do so in the first instance. (Code Civ. Proc. § 906.) The trial was divided into phases. The first phase determined only certain issues, and the issue of whether Securitas violated section 201 or 202 by not timely paying wages on termination was not among them. The trial court accordingly made no findings regarding the merits of Huff's claim for violation of sections 201 and 202, so there is nothing for us to review. Securitas similarly asserts that Huff's claim for failure to pay wages on termination fails because he did not notify the Labor and Workforce Development Agency of the facts and circumstances relating to that violation. Again, that issue has not yet been decided by the trial court and is therefore not ripe for review.

A court has discretion to order separate trials of issues and determine the order in which those issues are to be decided. (*Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.* (2002) 100 Cal.App.4th 193, 205.) The trial court properly rejected Securitas' argument that Huff waived his claim for failure to pay wages on termination, finding that the claim was not waived because it was not among the issues to be tried at the first phase of the trial and the second phase of the trial was to "*include any remaining issues that have not*

17

*yet been determined.*" We would reverse a decision regarding the management of a case for trial and the order in which issues are to be tried only for a manifest abuse of discretion. (*Downey Savings & Loan Ass'n v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1086.) Securitas argues that the pretrial scheduling orders contemplated only a trial of the claim for violation of the section 201.3 weekly pay requirement, and that the trial was divided into phases merely to allow that issue to be tried as to the chosen 20 employees first and any remaining employees in a later phase. But the trial court disagreed, and, interpreting its own orders, found the language broad enough to allow for the trial of the failure to pay on termination claim at a later phase of the proceedings. We find no abuse of discretion in that decision.

Securitas also contends that Huff forfeited the argument that other alleged violations could support the PAGA cause of action by not raising it in opposition to the defense motion for judgment during trial. But Huff did make the argument when he moved for a new trial, and the court properly considered it at that time in deciding to grant the motion. Securitas cites no authority for the proposition that the court was prohibited from correcting a legal error it made in its previous decision. As long as the trial court still has jurisdiction over a case, it has inherent authority to correct a prior ruling. (*LeFrancois v. Goel* (2005) 35 Cal.4th 1094, 1108 [procedural rules limit a party's ability to bring a motion for reconsideration but do not prevent a court from correcting a prior erroneous order, no matter how the error came to its attention].)

Securitas' arguments regarding Huff's purported failure to preserve certain claims are rooted in the idea that it did not have adequate notice of the claims and therefore could not properly defend against them. But this is not a case where a plaintiff was granted relief at trial on claims about which the defendant was previously unaware. The court's ruling here is simply that plaintiff should be allowed to pursue certain claims at a later phase of trial—at which point Securitas will have the opportunity to defend against them. The only prejudice identified by Securitas is that it did not conduct discovery

18

regarding the prompt payment on termination claims because it believed those claims were no longer at issue. But nothing prevents Securitas from conducting that discovery before the new trial. (*Fairmont Ins. Co. v. Superior Court* (2000) 22 Cal.4th 245, 247.)

### D. HUFF'S CROSS-APPEAL IS MOOT

Huff filed a protective cross-appeal from the order granting Securitas' motion for judgment and the resulting judgment in Securitas' favor. The trial court's order granting a new trial vacated the order and judgment from which Huff cross-appeals. Since we affirm the order granting a new trial, Huff's cross-appeal is moot.

### E. HUFF'S MOTION TO INTERPRET SECTION 201.3 IS DENIED

Recognizing that affirmance of the order granting a new trial means that we will not reach the issues he raises in his cross-appeal, Huff filed a motion requesting that we interpret section 201.3, subdivision (b)(6). He asks that we provide direction to the trial court on how to apply these statutory exemptions for the temporary employee weekly pay requirement on retrial in order to avoid additional proceedings there and in this court. But the order granting a new trial does not limit retrial to a particular issue. (*Barmas, Inc. v. Superior Court* (2001) 92 Cal.App.4th 372, 376 [court may either grant a new trial on all issues, or limit retrial to certain issues if that would not make the trial unfair].) As a result, all issues now remain to be tried, and on retrial (as Huff's counsel acknowledged at oral argument) the trial court will not be bound by the previous ruling on the issue. We therefore deny Huff's request that we interpret section 201.3, subdivision (b)(6) because that would constitute an advisory opinion, which is prohibited under established principles of appellate review. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 998.)

### III. DISPOSITION

The order granting a new trial is affirmed. Huff shall be awarded costs on appeal. The cross-appeal is moot and dismissed. No costs are awarded as to the cross-appeal.

19

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P. J.

_____

Mihara, J.

**H042852 –** *Huff v Securitas Security Services USA, Inc.*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-10-CV-172614 |
| Trial Judge: | Hon. Peter H. Kirwin |
| Counsel for Plaintiff/Respondent<br>Forrest Huff | Michael Millen |
| Counsel for Defendant/Appellant<br>Securitas Security Services USA, Inc. | James E. Hart<br>John Kevin Lilly<br>Littler Mendelson<br><br>Sherry Beth Shavit<br>Tharpe & Howell, LLP |

**H042852 –** *Huff v Securitas Security Services USA, Inc.*